UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

    -against-                              15 Cr. 360 (LAP)

BRIAN COLL,
                     Defendant.
-------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## BRIAN COLL'S MOTIONS *IN LIMINE* AND TO DISMISS COUNT ONE


SAM A. SCHMIDT, ESQ.
115 Broadway
Suite 1704
New York, New York 10006

JOSHUA L. DRATEL, ESQ.
Joshua L. Dratel, P.C.
29 Broadway
Suite 1412
New York, New York 10006


– Of Counsel –

Sam A. Schmidt
Joshua L. Dratel
Lindsay A. Lewis
Whitney G. Schlimbach

TABLE OF CONTENTS

Table of Contents.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Introduction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of the Facts

A.   *The Charges Against Mr. Coll.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

B.   *The Government's Expert Disclosure Pursuant to Rule 16(a)(1)(G).*. . . . . . . . . . . . . . . .  3

C.   *The Statement Allegedly Made By Mr. Coll to a Corrections Captain.*. . . . . . . . . . . . . .  5

D.   *The Inmates' Out-of-Court Statements At the Time of the Incident.*.. . . . . . . . . . . . . . .  5

ARGUMENT

POINT I

MUCH OF THE PROSPECTIVE TESTIMONY OF DR. GREENBERG
MUST BE EXCLUDED BECAUSE THE GOVERNMENT HAS
FAILED TO SATISFY RULE 16(A)(1)(G)'S NOTICE REQUIREMENT,
AND BECAUSE IT IS INADMISSIBLE UNDER *DAUBERT*. . . . . . . . . . . . . . . . . . . . . . . . .  6

A.   *The Government's Rule 16(a)(1)(G) Expert Notice Is Deficient.*. . . . . . . . . . . . . . . . . .  6

B.   *Certain Aspects of Dr. Greenberg's Projected Testimony Should Be Precluded.*. . . . . . .  13

POINT II

COUNT ONE SHOULD BE DISMISSED BECAUSE
THE CONCLUSIONS SET FORTH IN THE
GOVERNMENT'S RULE 16(A)(1)(G) EXPERT NOTICE FAIL
TO SATISFY THE ELEMENTS OF THE OFFENSE CHARGED. . . . . . . . . . . . . . . . . . . . . . .  19

A.   *The Language In the Indictment.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

B.   *The Government's Expert Notice Is Materially
Inconsistent With the Allegations In the Indictment.*. . . . . . . . . . . . . . . . . . . . . . . .  19

i

C. *The Applicable Law.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

POINT III

ANY AND ALL REFERENCE TO THE CONVERSATION BETWEEN
MR. COLL AND "CAPTAIN 2" IN WHICH MR. COLL ALLEGEDLY
MADE REFERENCE TO "GETTING A TATTOO OF A TEARDROP
ON HIS EYELID" SHOULD BE PRECLUDED AT TRIAL BECAUSE
IT IS NOT RELEVANT TO THE CHARGES AND UNDULY PREJUDICIAL. . . . . . . . . . 22

A. *The Applicable Law.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

B. *Mr. Coll's Conversation with "Captain 2" In Which He Allegedly*
*Makes Reference to "Getting a Teardrop Tattoo" Should Be*
*Excluded Because It Is Entirely Irrelevant to the Charges.* . . . . . . . . . . . . . . . . . . . . . . 23

C. *Mr. Coll's Conversation With "Captain 2" Should Be Excluded Under Rule 403,*
*Fed.R.Evid., As Any Probative Value Contained Therein Is Vastly Outweighed by the*
*Extraordinary Danger of Unfair Prejudice.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

POINT IV

STATEMENTS MADE BY INMATES DURING THE
ALTERCATION ARE INADMISSIBLE HEARSAY AND
DO NOT FALL WITHIN ANY EXCEPTION TO THE
HEARSAY RULES;  NOR ARE THEY ADEQUATELY
RELIABLE OR SUFFICIENTLY PROBATIVE TO JUSTIFY
ADMISSION ABSENT A VIABLE HEARSAY EXCEPTION  . . . . . . . . . . . . . . . . . . . . . . . 25

A. *The Excited Utterance and Present Sense*
*Impression Exceptions to the Hearsay Rule.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

B. *The Statements Are Not Admissible Under Either Hearsay*
*Exception Because There Is No Evidence That the Inmates*
*Making the Statements Personally Observed the Events Described.* . . . . . . . . . . . . . . . . . 28

C. *Additionally, the Statements Are Neither Reliable Nor*
*Probative, and Thus Inadmissible Pursuant to the*
*Reliability Analysis in* Ohio v. Roberts, 448 U.S. 56 (1980),
*and As Unduly Prejudicial Pursuant to Rule 403, Fed.R.Evid.* . . . . . . . . . . . . . . . . . . . . 30

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

TABLE OF AUTHORITIES

CASES

*Berk v. St. Vincent's Hosp. and Med. Ctr.*, 380 F. Supp. 2d 334 (S.D.N.Y. 2005). . . . . . . . . . . . 14

*Brady v. Maryland,* 373 U.S. 83 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Brown v. Keane*, 355 F.3d 82 (2d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28, 30

*Brown v. Wal-Mart Stores, Inc.*, 402 F. Supp.2d 303 (D.Me. 2005). . . . . . . . . . . . . . . . . . . . . . 13

*Burrage v. United States*, 571 U.S. __, 134 S.Ct. 881 (2014). . . . . . . . . . . . . . . . . . . . . . 15, 16, 18

*Cummiskey v. Chandris, S.A.*, 719 F. Supp. 1183 (S.D.N.Y. 1989),
    *aff'd*, 895 F.2d 107 (2d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28

*Daubert v.Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). . . . . . . . . . 1, 6, 7, 12, 14, 18

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Grimes v. Hoffmann–LaRoche*, Inc., 907 F.Supp. 33 (D.N.H.1995). . . . . . . . . . . . . . . . . . . . . . 14

*Kuhmo Tire Co. v. Carmichael,* 526 U.S. 137 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McGovern ex rel. McGovern v. Brigham & Women's Hosp.*,
    584 F. Supp.2d 418 (D. Mass. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mungo v. Duncan*, 393 F.3d 327 (2d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Ohio v. Roberts*, 448 U.S. 56 (1980), *abrogated by*
    *Crawford v. Washington*, 541 U.S. 36 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Old Chief v. United States*, 519 U.S. 172 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Parsons v. Honeywell, Inc.*, 929 F.2d 901 (2d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Russell v. United States*, 369 U.S. 749 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*United States v. Aleynikov*, 676 F.3d 71 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Alsugair*, 2003 WL 1799003 (D.N.J. April 3, 2003). . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Delvi*, 275 F. Supp.2d 412 (S.D.N.Y. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Duvall*, 272 F.3d 825 (7th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Ferguson*, 2007 WL 4539646 (D. Conn. Dec. 14, 2007). . . . . . . . . . . . . . 8, 9, 11

*United States v. Ford*, 750 F.3d 952 (8th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Hashmi*, not reported in ___ F.Supp.2d ___,
2009 WL 404281, (S.D.N.Y. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Jackson*, 51 F.3d 646 (7th Cir.1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Jones*, 299 F.3d 103 (2d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Padilla*, 1995 WL 261513 (S.D.N.Y. May 3, 1995). . . . . . . . . . . . . . . . . . . . 27

*United States v. Panarella*, 227 F.3d 678 (3d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 22

*United States v. Sturman*, 96 CR. 318 (BSJ), 1998 WL 126066 (S.D.N.Y. Mar. 20, 1998). . . . . 10

*United States v. Ulbricht*, 14CR68 KBF, 2015 WL 413318 (S.D.N.Y. Feb. 1, 2015). . . . . . . . 8, 9

*United States v. Valentin*, 2016 WL 1211304 ((D. Conn. March 25, 2016). . . . . . . . . . . . . . . . . 7

*United States v. Walsh*, 194 F.3d 37 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Wilkerson*, 189 F.R.D. 14 (D. Mass.1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Zolot*, 968 F. Supp.2d 411(D. Mass. 2013). . . . . . . . . . . . . . . . . . . . . . . 12, 13

*University of Tex. Southwestern Medical Center v. Nassar*, 570 U.S. ——, ——,
133 S.Ct. 2517, 2525, 186 L.Ed.2d 503 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Williams v. New York*, 337 U.S. 241 (1949). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

STATUTES

U.S. Const. Amend. V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

U.S. Const. Amend. VI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

18 U.S.C. §242. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 7, 15, 18, 20, 24

18 U.S.C. §371. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

18 U.S.C. §1519. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

18 U.S.C. §151512(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

21 U.S.C. §841(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Rule 401, Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22, 23, 24

Rule 402, Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22, 23, 24

Rule 403, Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22, 23, 25, 30, 32

Rule 702,  Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 3, 6, 7, 12, 13, 18

Rule 702(a),  Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Rule 703,  Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 6

Rule 705, Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 6

Rule 801, Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

Rule 802, Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

Rule 803, Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

Rule 803(1), Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26, 27

Rule 803(2), Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26, 27

Rule 807, Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

Rule 16, Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 18

Rule 16(a)(1)(G), Fed.R.Crim.P... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 3, 6, 7, 8, 15, 19

Rule 16(b)(1), Fed.R.Crim.P... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Rule 16(b)(1)(C), Fed.R.Crim.P... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Rule 16(b)(1)(C)(1), Fed.R.Crim.P... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Rule 16(b)(1)(C)(i), Fed.R.Crim.P... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

**Introduction**

This Memorandum of Law is submitted on behalf of defendant Brian Coll and in support of his motions *in limine* and to dismiss Count One.  As set forth below, there are four components to this motion:

(1)     (a)  to preclude the government's designated expert pathologist, Michael J. Greenberg, M.D., from rendering certain opinions, or, in the alternative, (b)  to compel the government to provide sufficient expert notice pursuant to Rule 16(a)(1)(G), Fed.R.Crim.P., or (c)  to preclude Dr. Greenberg's testimony pursuant to *Daubert v.Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Rule 702, Fed.R.Evid., and/or (d)  to delay the defense's reciprocal expert notice, pursuant to Rule 16(b)(1)(c), until the government's expert notice complies with Rule 16(a)(1)(G);

(2)     to dismiss Count One, which charges a violation of 18 U.S.C. §242,  Death Resulting from the Deprivation of Rights Under Color of Law, because the conclusions set forth in the government's Rule 16(a)(1)(G) expert notice fail to satisfy the elements of the offense charged;

(3)     to exclude any reference to a telephone conversation – either through a recording or testimony – with a corrections Captain, in which Mr. Coll allegedly spoke of "getting a tattoo of a teardrop on his eyelid," *see* Complaint, at 17, ¶ 21(d);  and/or

(4)     to exclude testimony with respect to out-of-court statements by inmates during the event in question – the altercation at Rikers Island December 19, 2012, that resulted in the death of inmate Ronald Spear.

1

Accordingly, for the reasons detailed below, it is respectfully submitted that Mr. Coll's motions be granted in their entirety.

## Statement of the Facts

### A.    *The Charges Against Mr. Coll*

Defendant Brian Coll is charged in five counts in Indictment 15 Cr. 360 (LAP).  Four counts allege conspiracy to obstruct justice (Count Two) [18 U.S.C. §1512(b)(3)], obstruction of justice (Count Three) [18 U.S.C. §1512(b)(3)], conspiracy to falsify records and documents (Count Four) (18 U.S.C. §371), falsifying records and documents (Count Five) (18 U.S.C. §1519).  Count One, which is the focus of these motions, charges Mr. Coll with Death Resulting from the Deprivation of Rights Under Color of Law.

Count One alleges

> 8.  On or about December 19, 2012, in the Southern District of New York, BRIAN COLL, the defendant, while acting under color of a law of the state of New York, did willfully assault Ronald Spear resulting in bodily injury to Ronald Spear and did thereby willfully deprive Ronald Spear of a right secured and protected by the Constitution and laws of the United States, namely, the right to be secure in his person and free from excessive use of force, to wit, while working as a correction officer in the New York City Department of Correction assigned to Rikers Island in the Bronx, New York, COLL willfully kicked Ronald Spear multiple times in the head while he was restrained, which resulted in bodily injuries to Spear and in the death of Spear.

Indictment, at ¶ 8.

Count One also incorporates the allegations set forth in paragraphs 1-5 of the indictment. In paragraphs 4 and 5, which are relevant to these motions, the indictment alleges that

> 4. On or about December 19, 2012, Ronald Spear was assaulted by Correction Officer BRIAN COLL, the defendant, while Spear was fully restrained by other correction officers including defendant BYRON TAYLOR and when Spear posed no danger to COLL or any other correction officers. Specifically, COLL

2

repeatedly kicked Spear in the head while Spear was already restrained and was lying face-down, prone on the prison floor. COLL continued to kick Spear in the head even after another correction officer told COLL to stop and attempted to shield Spear's head from further blows. After COLL kicked Spear in the head multiple times, COLL bent down and picked up Spear's head. COLL put his face inches away from Spear, and stated words to the effect of "that's what you get for fucking with me," and "remember that I'm the one who did this to you."  COLL then dropped Spear's head, and it struck the hard prison floor. As a result of this assault, Spear suffered severe bodily injuries, including multiple contusions to the skull.

5. Spear died as a result of the bodily injuries caused by COLL's assault. Spear's autopsy determined that he had three recent contusions on his skull, including a "brain bleed" caused by the blunt force impact to the head, consistent with Spear being kicked in the head while he was lying prone on the ground. The Medical Examiner conducting the autopsy concluded that the cause of death was "hypertensive cardiovascular disease" with "physical altercation including blunt force trauma to head" and diabetes as contributing factors, and ruled the death a homicide. The assault by COLL was therefore a proximate cause of Spear's death.

*Id.*, at ¶¶ 4-5.

## B.     *The Government's Expert Disclosure Pursuant to Rule 16(a)(1)(G)*

The government has provided in discovery documents from the Office of the Chief Medical Examiner ("OCME") that included the Report of Autopsy ("Report"), attached as Exhibit A to the September 26, 2016, Declaration of Sam A. Schmidt, Esq.,[1] prepared by Dr. Michael J. Greenberg.

In response, defense counsel requested notice pursuant to Rule 16(a)(1)(G), Fed.R.Crim.P., *i.e.*, "a written summary of any testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial."

Replying in an August 31, 2016, letter, Exhibit B, the government noted that, in addition to providing OCME records and the Certificate of Death,

_____

[1]  All of the Exhibits to this motion are attached to Mr. Schmidt's Declaration.

the Government has already produced in discovery the OCME reports, including Dr. Greenberg's report, that were prepared in connection with the relevant autopsy. These reports contain the subject of Dr. Greenberg's testimony, as well as the bases and reasons for the opinions that he will express at trial. Specifically, it is expected that Dr. Greenberg will testify regarding the results and findings of the autopsy, the nature and extent of the injuries observed, and the cause and manner of the victim's death. In addition to the opinions contained in the relevant autopsy reports, we expect Dr. Greenberg to testify that, based on his medical training as well as his experience as a medical examiner, death is a predictable and foreseeable conclusion of blunt force trauma to the head.

Exhibit B.

In a letter dated September 16, 2016, Exhibit C, the government supplemented its expert

notice by informing defense counsel that the government expected

that Dr. Greenberg will further testify that Mr. Spear had a diseased heart, and that, even without the physical altercation that occurred on the morning of Mr. Spear's death, he was a very sick man. Dr. Greenberg is expected to testify that, in his role as a medical examiner, he must determine the manner of death, including whether an individual has died of natural causes. Here, because of the altercation that preceded Mr. Spear's death, Dr. Greenberg ruled out a death by natural causes. He then had to determine whether the death was an accident, a homicide, or undetermined. Because Mr. Spear died "at the hand of another," that is, following an altercation, the death was ruled a homicide. Dr. Greenberg is expected to testify that this classification is based on the injuries observed and Dr. Greenberg's understanding of the events; it is not intended to reflect anyone's intent or state of mind. We also expect Dr. Greenberg to testify that, because of the location of the injury to Mr. Spear's skull, he was able to determine that it likely did not occur during a takedown, and is consistent with being kicked repeatedly – and with force – in the head.

As stated in the report, we expect Dr. Greenberg to testify that Mr. Spear died of cardiac arrest, and specifically, of a cardiac arrhythmia. Dr. Greenberg will also explain the connection between the high levels of stress from the assault, the blows to Mr. Spear's head and the injury to the brain, and Mr. Spear's cardiac arrest, which, as noted in the report and above, he determined was a homicide. He will further testify that, given Mr. Spear's state, blunt force trauma to the head – independent of any preceding takedown – could have triggered an arrhythmia. In addition, and as previously stated, we expect Dr. Greenberg to testify that, based on his medical training as well as his

experience as a medical examiner, death is a natural and foreseeable conclusion of blunt force trauma to the head.

Exhibit C.

**C.**     ***The Statement Allegedly Made By Mr. Coll to a Corrections Captain***

The June 9, 2015, Complaint alleges a telephone conversation between Mr. Coll and "Captain 2" in which Mr. Coll allegedly makes reference to "getting a tattoo of a teardrop on his eyelid," *see* Complaint, at 17, ¶ 21(d).  The government has informed defense counsel that it intends to offer evidence of that conversation.

**D.**     ***The Inmates' Out-of-Court Statements At the Time of the Incident***

The Complaint also describes as follows certain statements made by inmates allegedly observing the December 19, 2012, incident: "the inmates – who were becoming agitated and had begun yelling things along the lines of 'what are they doing to him?' and 'they're going to kill him!' . . . [and] continued to shout things along the lines of 'they're kicking him!' and 'they're killing him!'."  *Id.*, at ¶¶13(i)-(j).

Additional relevant facts are set forth in the accompanying September 26, 2016, Declaration of Sam A. Schmidt, Esq., which is respectfully incorporated by reference herein.

## ARGUMENT

## POINT I

**MUCH OF THE PROSPECTIVE TESTIMONY OF DR. GREENBERG MUST BE EXCLUDED BECAUSE THE GOVERNMENT HAS FAILED TO SATISFY RULE 16(A)(1)(G)'S NOTICE REQUIREMENT, AND BECAUSE IT IS INADMISSIBLE UNDER *DAUBERT***

In order to offer expert witness testimony, the government must first satisfy Rule

16(a)(1)(G), Fed.R.Crim.P.'s, requirement of notice, which mandates that

> [a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . .  The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Once that notice requirement is satisfied, the next step is determining whether the expert

is qualified, and whether his opinions meet the standards of admission under Rule 702,

Fed.R.Evid., and are therefore reliable, as interpreted and applied in *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Rule 702 provides that:

[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

## A.    *The Government's Rule 16(a)(1)(G) Expert Notice Is Deficient*

Here, the government's expert notice clearly does not satisfy Rule 16(a)(1)(G)'s notice requirement.  As a result, much of Dr. Greenberg's proffered testimony is inadmissible under Rule 702, and both *Daubert* and *Kuhmo Tire Co. v. Carmichael,* 526 U.S. 137 (1999).

For example, the government's expert notice often states the topic to be discussed but does not cite the expert's opinion itself. When the government does state the opinion, it often does not set forth the bases and reasons therefor.  In addition, the government's expert notice does not include a summary of the expert opinion sufficient to satisfy an essential element of the offense charged in Count One (18 U.S.C. §242) – that "death resulted" as a result of the defendant's alleged conduct depriving the deceased of his civil rights.

As a consequence of this failure, some of the opinions in the government's notice, **post**, at 13-18, must be excluded because they fail to address a determination of a fact at issue and would confuse jurors rather than assist them in understanding the testimony. *Daubert*, 509 U.S. at 591.

Moreover, absent proper notice, it is impossible for the defendant to prepare adequately for trial, or provide reciprocal notice pursuant to Rule 16(b)(1)(C)(i), Fed.R.Crim.P.[2]

Also, the party providing notice must do more than merely identify the general topics about which the expert will testify.  Indeed, the summary must disclose the expert's actual opinions.  *United States v. Ferguson*, 2007 WL 4539646, at *1 (D. Conn. Dec. 14, 2007), *citing United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001)*.  See also  United States v. Valentin*,

---

[2] In order to avoid delay, defense counsel provided by letter Rule 16(b)(1)(C)(i) notice that was responsive to those portions of the government's notice that were adequate.  A copy of that letter is attached as Exhibit D.

2016 WL 1211304 ((D. Conn. March 25, 2016).  ("Rule requires a summary of the expected

testimony, not a list of topics").

> As the Court in *Ferguson* explained,

> > [t]o describe the bases for the expert's opinion, the summary
> > "should cover not only written and oral reports, tests, reports and
> > investigations, but any information that might be recognized as a
> > legitimate basis for an opinion under Federal Rule of Evidence
> > 703, including opinions of other experts." *Id.* Advisory Committee
> > Notes (1993) (noting that this description is "perhaps [the] most
> > important" part of the required disclosure). As the Advisory
> > Committee notes to the Rule explain, the disclosure requirement
> > "is intended to minimize surprise that often results from
> > unexpected expert testimony, reduce the need for continuances,
> > and to provide the opponent with a fair opportunity to test the merit
> > of the expert's testimony through focused cross-examination." *Id.*

2007 WL 4539646, at *1, *citing* Fed.R.Evid. Advisory Committee Notes.

> Also, when the expert testimony involves technical or scientific evidence, Rule 16

requires *more* disclosure than other expert testimony. *See United States v. Jackson*, 51 F.3d 646,

651 (7th Cir.1995). *See also*, *United States v. Wilkerson*, 189 F.R.D. 14, 16 (D. Mass.1999) ("the

extent of detail required . . . will depend on the nature of the expert testimony").

> An adequate summary of the expert's opinions and the bases and reasons for those

opinions are essential to satisfying the notice requirement. Rule 16(a)(1)(G).  *See United States v.*

*Ulbricht*, 14CR68 KBF, 2015 WL 413318, at *7 (S.D.N.Y. Feb. 1, 2015).

> The need for detailed and appropriate notice is not only self-evident but is explained in

the Advisory Committee notes to the 1993 amendment of Rule 16:

> > [d]isclosure is intended to minimize surprise that often results from unexpected
> > expert testimony, reduce the need for continuances, and to provide the opponent
> > with a fair opportunity to test the merit of the expert's testimony through focused
> > cross-examination.

Advisory Committee's note to 1993 amendment of Rule 16, Fed.R.Crim.P.

> Conversely, without proper disclosure

> > a Court cannot possibly assess admissibility, an opposing party cannot prepare
> > a response or for proper cross-examination, and a trial devolves into jungle
> > warfare by ambush. The various rules and the case law interpreting them are
> > designed to avoid that outcome.

*Ulbricht* at *4.

The remedies available to courts' vary from compelling adequate notice to preclusion. *Id.* Here, however, as detailed **post**, dismissal of Count One is also compelled by the expert notice's deviations from the allegations in the Indictment to the extent that the elements of the offense cannot be established beyond a reasonable doubt.

Defendant does not dispute that OCME records including the Report of Autopsy and the government letters include an adequate summary of some of the expected testimony of Dr. Greenberg.  The defense does not expect to challenge Dr. Greenberg's ability to testimony as to "his role as a medical examiner," that "Mr. Spear had a diseased heart, and that, even without the physical altercation that occurred the morning of Mr. Spear's death, he was a very sick man," nor testimony that "Mr. Spear died of cardiac arrest, and specifically, of a cardiac arrhythmia."

However, the government's notice that Dr. Greenberg will also explain "the connection between the high levels of stress from the assault, the blows to Mr. Spear's head and the injury to the brain, and Mr. Spear's cardiac arrest . . . ," fails to provide any *opinion*, and therefore is insufficient to constitute adequate notice.  *See Ferguson*, 2007 WL 4539646, at *1 (D. Conn. Dec. 14, 2007).

In addition, the Report does not include the actual bases for Dr. Greenberg's opinions.

9

The government's September 16, 2016 (Exhibit C), letter does state that Dr. Greenberg

> has been provided with use of force reports and/or statements from the Corrections Officers purportedly involved in or witness to the use of force, as well as the interviews that the Rikers' investigators and/or New York City Police Department conducted of inmate witnesses, among other things, including the documents detailed in the autopsy report.

Exhibit C.

Yet that summary raises certain fundamental questions:  What exactly did Dr. Greenberg rely on to determine a cause and manner of death or base the opinions cited in the expert notice disclosure? The general description of possible bases does not meet the requirements of Rule 16(b)(1). *United States v. Sturman*, 96 CR. 318 (BSJ), 1998 WL 126066, at *1 (S.D.N.Y. Mar. 20, 1998).

The Report states that the cause of death was hypertensive cardiovascular disease  and listed contributing causes of death as "physical altercation including blunt force trauma to head" and "diabetes mellitus."  The government has acknowledged that the only part of the "physical altercation" claimed to be unlawful and the basis of Count One, occurred after Mr. Spear was restrained and moments before the probe team responded.[3]

Thus, because of the timing of the alleged blunt force trauma and Dr. Greenberg's opinion that "given Mr. Spear's state, blunt force trauma to the head – independent of any preceding takedown – could have triggered an arrhythmia such blunt force trauma," it is of great importance to know that actual basis for Dr. Greenberg's opinion that the blunt for trauma to the head was a "contributing cause of death."

---

[3] The Complaint indicates, at ¶ 13(o), that the probe team responded "moments" after Mr. Coll's alleged unlawful conduct.  Reports received in discovery indicate that a member of the probe team immediately noted that Mr. Spear was "motionless."

10

Nor is citing every document that may have been available for Dr. Greenberg's review a valid substitute for the required notice. In that context, the reports and inmate interviews include contradictions, inconsistencies, and allegations that clearly are not consistent with some of the findings in the Report or opinions in the expert notice.  Thus, reliance on one such statement necessarily involves repudiation of another without explanation or foundation.

Also, while certainly it is useful to know that "Dr. Greenberg will also explain the connection between the high levels of stress from the assault, the blows to Mr. Spear's head and the injury to the brain, and Mr. Spear's cardiac arrest" (Exhibit C), informing counsel of the topic of Dr. Greenberg's opinion is not sufficient because the party must also disclose the expert's opinions themselves.  *Ferguson*, at *1, *citing* FRE Advisory Committee Notes.  Nor does the government's expert notice identify the basis of Dr. Greenberg's opinions, whatever they may be.

Further, the government's statement that it "expect[s] Dr. Greenberg to testify that, based on his medical training as well as his experience as a medical examiner, death is a predictable and foreseeable conclusion of blunt force trauma to the head" does not inform the defendant of either the factual basis for such opinion, its relevance, or the methodology used to reach that opinion.

Thus, it defies common sense that, contrary to the government's assertion, that such a vague and boundless opinion should be accepted, notwithstanding logic and the position of the defense's expert.[4]

─────────────

[4] Part of defendant's expert notice stated that its expert pathologist, Zhongxue Hua, M.D., Ph.D, would testify that the statement "death is a natural and foreseeable conclusion of blunt force trauma to the head" is neither a medically appropriate nor proper conclusion or opinion.  *See* Exhibit D.

Dr. Greenberg's projected position that "death is a predictable and foreseeable conclusion of blunt force trauma to the head" contradicts his opinion that "blunt force trauma to the head – independent of any preceding takedown – *could* have triggered an arrhythmia[,]" Exhibit C (emphasis added), because Dr. Greenberg *cannot* conclude that the former occurred in this case. Instead, all he can is that it "could" have triggered an arrhythmia in a very sick man – and that is decidedly *not* the equivalent of a generic predictability or foreseeability.

As a result, it appears Dr. Greenberg is unable to opine that the blunt force trauma alleged to have been caused by defendant would have caused death on its own.  Instead, at most, that trauma *could* have triggered an arrhythmia in a very sick man with heart disease.

Trauma merely is a substitute for the term injury. Blunt force trauma is an injury cause by a blunt object or a collision with a blunt object. The government's expert "summary" is so vague and general that such testimony, even from an expert, would neither assist a jury in understanding the evidence nor determine a fact in issue;  nor would it allow the court to make a threshold determination of admissibility under *Daubert.*

Consequently, the government's notice is plainly deficient in that respect. In *United States v. Zolot*, 968 F. Supp.2d 411(D. Mass.  2013), the Court noted that

> "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 [] (1997). The gate-keeping function of the trial court requires more than merely "taking the expert's word for it." Fed.R.Evid. 702 advisory committee's note (citing *Daubert v. Merrell Dow Pharms*., Inc., 43 F.3d 1311, 1319 (9th Cir.1995).

968 F. Supp.2d at 429-30.

**B.**     ***Certain Aspects of Dr. Greenberg's Projected Testimony Should Be Precluded***

Dr. Greenberg's vague and overbroad opinion – that "death is a predictable and foreseeable conclusion of blunt force trauma to the head" – is obviously designed to satisfy the causation requirement – proximate cause – that the result of the conduct must have been reasonably foreseeable to the defendant, which will be discussed **post**.

However, in order to be admissible, Rule 702 requires that the opinion must not only be relevant to the issues in the case, but must also be based upon sufficient facts and data, be the product of reliable principals and methods, and be reliably applied.  Simply providing notice that Dr. Greenberg's opinion is based upon "his medical training as well as his experience as a medical examiner" is insufficient to qualify that notice under Rule 702.

As the Court in *Zolot* explained,

> "Experts may testify on the basis of experience." *Brown v. Wal-Mart Stores, Inc.*, 402 F. Supp.2d 303, 308 (D.Me. 2005). However, "if the [expert] witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id*. (citing Fed.R.Evid. 702 advisory committee's note).

968 F. Supp.2d at 430.

Here, it makes no difference how qualified or experienced Dr. Greenberg is as a pathologist. Experience is not a substitute for reliability.  As the Eleventh Circuit has pointed out, "[i]f admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).

13

Similarly, "[a]n anecdotal account of one expert's experience, however extensive or impressive the numbers it encompasses, does not by itself equate to a methodology, let alone one generally accepted by the relevant professional community." *Berk v. St. Vincent's Hosp. and Med. Ctr.*, 380 F. Supp. 2d 334, 354 (S.D.N.Y. 2005). *See also Grimes v. Hoffmann–LaRoche, Inc.*, 907 F.Supp. 33, 38 (D.N.H.1995) ("an expert cannot establish that a fact is generally accepted merely by saying so"); *McGovern ex rel. McGovern v. Brigham & Women's Hosp.*, 584 F. Supp.2d 418, 426 (D. Mass. 2008) (expert's "opinion was connected to the existing data about the risk of stroke after vacuum extraction only by his own *ipse dixit*").

Thus, in *Berk*, *Grimes,* and *McGovern*, each court precluded the proffered expert's testimony regarding causation because the offering party failed to provide sufficient evidence of methodology or acceptance in the scientific community.

Here, the government has failed to provide any methodology to test the validity of Dr. Greenberg's opinion. The only relevant example of Dr. Greenberg's opinion, the blunt force trauma to the head of Mr. Spear, does not offer support.  At most, the blunt force trauma *could* have initiated an arrhythmia in a terminally ill patient suffering from various cardiac diseases, *if* it was not caused by the preceding altercation.

Therefore, both the notice and opinion fail to meet the necessary standards for admission of expert testimony regarding the effect of blunt force trauma to the head – and particularly as they relate specifically to this case, Mr. Spear's condition, and Mr. Coll's alleged conduct.  As a result, any such opinion(s) from Dr. Greenberg should be precluded.

Also, as noted **ante**, to be admissible, the proffered expert opinion must address a fact at issue and help jurors understand the testimony, and not confuse them. *Daubert*, 509 U.S. at 591.

14

The enhanced penalty provision in Count One – carrying a maximum of life imprisonment – does not require to prove Mr. Coll's intent to cause Mr. Spear's death.  Rather, the government must prove that "death resulted' from Mr. Coll's alleged conduct that deprived Mr. Spear of his civil rights.

Here, the government, in the Complaint, the Indictment, and conversations with defense counsel, has alleged that Mr. Coll's alleged multiple kicks to Mr. Spear's head after he was restrained constituted the conduct that "resulted" in Mr. Spear's death.  The Report, *i.e.*, Dr. Greenberg's opinion the government provided in its Rule 16(a)(1)(G) notice, is significantly less clear.

For example, the Report states that  the "physical altercation including blunt force trauma to the head" was a "contributing cause of death."  Yet, the physical altercation included the lawful conduct of subduing and the restraining of Mr. Spear by multiple corrections officers.

In its supplemental letter, the government provided further notice that Dr. Greenberg would testify that "given Mr. Spear's state, blunt force trauma to the head – independent of any preceding takedown – *could* have triggered an arrhythmia."  Exhibit C (emphasis added).

The concept of enhanced penalties for unlawful conduct when death results from such conduct is not limited to the offense charged in Count One (18 U.S.C. §242).  The statute with similar language most commonly litigated is 21 U.S.C. §841(b)(1).  That section's language that exposes a defendant to the enhanced penalty is "if death results from" the use of the illegally distributed controlled substance.

In *Burrage v. United States*, 571 U.S. __, 134 S.Ct. 881 (2014), the Supreme Court identified the requirements necessary to hold  a defendant responsible for the enhanced penalties

when "death results from" the defendant's unlawful conduct.[5]

As the Court explained in *Burrage*,

"[r]esults from" imposes, in other words, a requirement of actual causality. "In the usual course," this requires proof " 'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct. *University of Tex. Southwestern Medical Center v. Nassar*, 570 U.S. ——, ——, 133 S.Ct. 2517, 2525, 186 L.Ed.2d 503 (2013) (quoting Restatement of Torts § 431, Comment a (1934)). The Model Penal Code reflects this traditional understanding; it states that "[c]onduct is the cause of a result" if "it is an antecedent but for which the result in question would not have occurred." §2.03(1)(a). That formulation represents "the minimum requirement for a finding of causation when a crime is defined in terms of conduct causing a particular result." (*citations omitted*).

*Id.* at 888.

Elaborating, the Court pointed out that

it is one of the traditional background principles "against which Congress legislate[s]," *Nassar, 570 U.S., at* ——, 133 S.Ct., at 2525, that a phrase such as "results from" imposes a requirement of but-for causation.

*Id.* at 889.

Here, it is simply *not* sufficient – for purposes of imposing liability for the enhanced penalty – that the conduct alleged was part of the "physical altercation" that was merely a "contributing factor" in causing the victim's death.  *See e.g United States v. Ford*, 750 F.3d 952, 954-55 (8th Cir. 2014).

Nor is Dr. Greenberg's opinion that "blunt force trauma to the head – independent of any preceding takedown – *could* have triggered an arrhythmia" sufficient.  Exhibit C (emphasis added).  The unusual wording of that opinion begs the question whether Dr. Greenberg could,

---

[5] The Supreme Court made it clear that the same standard applied whether using the terms "results from, "because of", "because", "based on" and by reason of". *Burrage* 134 S.Ct. at 888-89.

with sufficient confidence, foreclose the possibility that the arrhythmia occurred *prior* to the infliction of any "blunt force trauma to the head."

In fact, the government's citation to the Report is even more attenuated, and therefore far less probative, than the evidence in *Ford.*   At least in *Ford*, the consumption of heroin sold by the defendant was undeniably a contributing factor. Here, the alleged kicks while Mr. Spear was finally restrained were not the "contributing factor;"   rather the "physical altercation *including* blunt force trauma to head" were.  (Emphasis added).

The government advances the position that the altercation commenced with an argument, then a scuffle between Mr. Spear and the defendant*,* continued with Officer Torres grabbing and throwing Mr. Spear to the ground, and then culminated in efforts by multiple officers to overcome Mr. Spear]'s significant physical resistance.  As a result, Mr. Spear was subdued, and then finally restrained.  Yet none of those actions are alleged to have constituted violations of the law.

Regarding the cause of death, if Dr. Greenberg will not offer any opinion other than that Mr. Spear died of Hypertensive Cardiovascular disease, with the physical altercation including blunt for trauma to the head and Diabetes Mellitus as contributing causes of death, and that " blunt force trauma to the head – independent of any preceding takedown – *could* have triggered an arrhythmia," he should be precluded at trial from offering an opinion as to the cause of death. Exhibit C (emphasis added).

Dr. Greenberg's opinion would not "help the trier of fact to understand the evidence or to determine a fact in issue."  702(a), Fed.R.Evid.  Nowhere does the government's expert notice (or the Report itself) indicate an opinion by Dr. Greenberg that any injuries allegedly caused by

Mr. Coll's conduct resulted in Mr. Spear's death or could have, on its own, caused his death.[6]

At most the expert testimony by Dr. Greenberg would be that if Mr. Spear had not already commenced cardiac arrhythmia from the initial altercation with Mr. Coll, the takedown by CO Torres or the resistance to getting his hands behind his back to restrain him, then the conduct of the defendant "*could* have triggered an arrhythmia."  Exhibit C (emphasis added).

Again, that construction is simply insufficient to establish liability for the enhanced penalties in §242.  Therefore, Dr. Greenberg's opinion is neither relevant to determination of a fact at issue nor helpful to understanding the relevant evidence. As a result, Dr. Greenberg should be precluded from offering any such opinion at trial.

Conversely, if Dr. Greenberg believes that he can deliver such an opinion, the government must provide proper and sufficient notice of such opinion as well as the bases for that opinion.[7]   It is also difficult to believe that Dr. Greenberg will not testify to other relevant opinions during his direct examination. In this case, in which the necessary medical and scientific proof is both complex and contested, the government expert witness' opinions and the bases of his opinions should be set forth with more specificity, or precluded altogether by principles of Rule 16, Rule 702, and/or *Daubert*.

---

[6] The possible exception to the "but for" requirement can be found in cases that the *Burrage* court found "unusual." The example given was A inflicts a fatal stab wound but before he dies, B shoots the victim in the head. Both A and B are liable for the homicide. *Burrage*, 134 S. Ct. at 889.

[7] If, in fact, Dr. Greenberg has informed the government that as a result of Mr. Spear's underlying pre-existing medical condition, it is  impossible to render an opinion to a medical certainty when and what caused Mr. Spear's cardiac arrhythmia, the government has the obligation pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963), to disclose such information.

18

## POINT II

### COUNT ONE SHOULD BE DISMISSED BECAUSE THE CONCLUSIONS SET FORTH IN THE GOVERNMENT'S RULE 16(A)(1)(G) EXPERT NOTICE FAIL TO SATISFY THE ELEMENTS OF THE OFFENSE CHARGED

The deficiencies in the government's expert notice also compel the conclusion that Count One is insufficient on its face, and/or that the instructions to the grand jury could not have accurately reflected the law.

**A.**    *The Language In the Indictment*

The Indictment alleges in pertinent part

5. Spear died as a result of the bodily injuries caused by COLL's assault. Spear's autopsy determined that he had three recent contusions on his skull, including a "brain bleed" caused by the blunt force impact to the head, consistent with Spear being kicked in the head while he was lying prone on the ground. The Medical Examiner conducting the autopsy concluded that the cause of death was "hypertensive cardiovascular disease" with "physical altercation including blunt force trauma to head" and diabetes as contributing factors, and ruled the death a homicide. The assault by COLL was therefore a proximate cause of Spear's death.

Indictment, at ¶ 5.

**B.**    *The Government's Expert Notice Is Materially Inconsistent With the Allegations In the Indictment*

The government's expert notice, however, makes it clear that the medical examiner, *i.e.* the government's expert, is unable to state that the alleged unlawful conduct of the defendant either triggered the arrhythmia nor was "independently sufficient" to cause Mr. Spear's death.

Thus, Mr. Spear did not die as a result of the alleged assault by Mr. Coll.  Indeed, the Indictment, the Report of Autopsy and the expert notice all fail to contend that Mr. Coll's alleged

19

unlawful conduct was a "contributory cause" of death.[8]

Instead, the government's current claim is that the "physical altercation including the blunt force trauma to the head" constituted a contributing cause of death.  As a result, the government's position is that sometime during the "physical altercation" – a time frame that includes the initial contact between the defendant, the takedown, and Mr. Spear's fierce resistence to being restrained – Mr. Spear suffered a cardiac arrhythmia.

That the government expert can testify that the alleged blunt force trauma to the head "independent of any preceding takedown – could have triggered an arrhythmia" is insufficient (to establish liability for §242's enhanced penalties) without proof that the preceding conduct – none of which was unlawful – did not cause the arrhythmia.

Thus, the Indictment's claim, at ¶ 5, that "the assault by COLL was . . . a proximate cause of Spear's death" is neither accurate nor sufficient to establish the elements of the offense, and is materially inconsistent with Dr. Greenberg's stated position.  Similarly, Dr. Greenberg's equivocal conclusion fundamentally undermines the Indictment's allegation that "Spear died as a result of the bodily injuries caused by COLL's assault."  *Id.*

## C.    *The Applicable Law*

Thus, on its face, the indictment fails to adequately set forth facts sufficient for Count One,  Death Resulting from the Deprivation of Rights Under Color of Law.  For example, as the Second Circuit has declared, "[a]n indictment that fails to allege the essential elements of the crime charged offends both the Fifth and Sixth Amendments." *United States v. Pirro*, 212 F.3d

---

[8] Therefore, the question whether conduct that serves as a contributory cause of death is a sufficient basis for proof of the "but for" requirement need not be litigated in this motion to dismiss.

86, 92 (2d Cir. 2000) (*citing Russell v. United States*, 369 U.S. 749, 760-61 (1962)).  As the

Court in *Pirro* explained, "'[t]he Indictment Clause of the Fifth Amendment requires that an

indictment contain some amount of factual particularity to ensure that the prosecution will not fill

in elements of its case with facts other than those considered by the grand jury.'"  *Id*. (quoting

*United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999)).

    The Sixth Amendment guarantee of the defendant's right "'to be informed of the nature

and cause of the accusation' against him is also offended by an indictment that does not state the

essential elements of the crime."  *Pirro,* 212 F.3d at 93, *quoting Russell*, 369 U.S. at 761, *and*

*citing Walsh*, 194 F.3d at 44.  As a result, "the indictment must state some fact specific enough to

describe a particular criminal act, rather than a type of crime."  212 F.3d at 93;  *see also United*

*States v. Hashmi*, not reported in  ___ F.Supp.2d ___, 2009 WL 404281, *3 (S.D.N.Y. 2009).[9]

    In that context, courts have routinely held that "a charging document fails to state an

offense if the specific facts alleged in the charging document fall beyond the scope of the

relevant criminal statute, as a matter of statutory interpretation."  *United States v. Panarella*, 227

F.3d 678, 685 (3d Cir. 2000).  *See also United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir.

2012); *United States v. Alsugair*, 2003 WL 1799003 (D.N.J. April 3, 2003).

    Thus, if the facts alleged in the charging document do not establish the crime charged, the

charge must be dismissed.  *Panarella*, 227 F.3d at 685.  Here, Count One does not satisfy these

---

    [9]  In *Pirro*, an interlocutory appeal by the government, the Second Circuit upheld the
district court's order striking a portion of one of the counts of the indictment which failed to
allege an essential element of a tax fraud charge, *i.e.*, a material false representation.  212 F.3d at
93.

constitutional and statutory standards.[10]

Moreover, based upon the critical divergence between the allegations in the Indictment and the government's subsequent expert notice, it appears clear that the grand jury was improperly instructed as to the law regarding Count One.  Consequently, it is respectfully requested that Count One be dismissed for failing to state the elements of the offense charged, or, in the alternative, the Court review the grand jury minutes to determine whether the grand jury was instructed properly with respect to the requisite elements for liability on Count One.

**POINT III**

**ANY AND ALL REFERENCE TO THE CONVERSATION BETWEEN MR. COLL AND "CAPTAIN 2" IN WHICH MR. COLL ALLEGEDLY MADE REFERENCE TO "GETTING A TATTOO OF A TEARDROP ON HIS EYELID" SHOULD BE PRECLUDED AT TRIAL BECAUSE IT IS NOT RELEVANT TO THE CHARGES AND UNDULY PREJUDICIAL**

Pursuant to Rules 401, 402, and 403, Fed.R.Evid., the Court should exclude any evidence and/or reference at trial to the conversation (either through a recording and/or witness testimony) between Mr. Coll and "Captain 2" in which Mr. Coll allegedly makes reference to "getting a tattoo of a teardrop on his eyelid," *see* Complaint, at 17, ¶ 21(d), because the conversation (1)  is irrelevant to the case and the charges at issue, nor does it constitute an admission of guilt; and (2) even if relevant, the negligible probative value, if any, is substantially outweighed by the overwhelming danger of unfair prejudice to Mr. Coll, confusion of the issues, and the potential for misleading the jury.

As a result, the conversation represents inadmissible propensity evidence, and

---

[10]  Of course, "it is a settled rule that a bill of particulars cannot save an invalid indictment."  *Russell,* 369 U.S. at 770.  *See also Pirro*, 212 F.3d at 95 n. 10 (same).  The same rule should logically apply to any expert notice as well.

transparently so.  Indeed, such evidence is designed solely to convince the jury that Mr. Coll's statement makes it more likely that he is guilty of the crimes charged.  Accordingly, for the reasons set forth below, it is respectfully requested that the Court grant Mr. Coll's motion *in limine* for a ruling precluding the proffered evidence from being introduced at trial.

## A.     *The Applicable Law*

Rule 401, Fed.R.Evid., defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Rule 401, Fed.R.Evid.  Rule 402 requires the exclusion of irrelevant evidence from trial.  Rule 402, Fed.R.Evid.

Pursuant to Rule 403, Fed.R.Evid., even *relevant* evidence is excluded at trial when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," or by "considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Rule 403, Fed.R.Evid.

## B.     *Mr. Coll's Conversation with "Captain 2" In Which He Allegedly Makes Reference to "Getting a Teardrop Tattoo" Should Be Excluded Because It Is Entirely Irrelevant to the Charges*

It is well-settled that in criminal trials, all facts presented to the jury must be "strictly relevant to the particular offense charged."  *Williams v. New York*, 337 U.S. 241, 247 (1949).

Here, Mr. Coll's alleged reference to "getting a teardrop tattoo on his eyelid" (Complaint at 17, ¶ 21(d)),  is irrelevant to the essential elements of the offenses the government must prove at trial.  Nor, more broadly, is it probative of  motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, lack of accident, or any of the other traditional purposes for admissibility of such evidence.

23

Indeed, as discussed **post**, intent to kill is not even an element of the enhanced offense under §242.  Nor is it conduct, but simple a statement that does not reflect Mr. Coll's state of mind at the time of the incident, but rather at some point afterward.  Nor does it constitute an admission of guilt.  Therefore, it is not relevant for that purpose, either.

Accordingly, any evidence or mention of Mr. Coll's alleged statement regarding "getting a tattoo of a teardrop on his eyelid," does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" as is required under Rule 401, Fed.R.Evid., and therefore the conversation between Mr. Coll and "Captain 2" must be precluded at trial, under Rule 402, because such evidence and/or reference is not relevant to the charges against Mr. Coll.

**C.**    *Mr. Coll's Conversation With "Captain 2" Should Be Excluded Under Rule 403, Fed.R.Evid., As Any Probative Value Contained Therein Is Vastly Outweighed by the Extraordinary Danger of Unfair Prejudice*

In addition, even if the government's evidence is relevant, its *de minimis* probative value is overwhelmed by its unfair prejudicial effect.  Introducing Mr. Coll's conversation with "Captain 2," in which Mr. Coll allegedly makes reference to "getting a tattoo of a teardrop on his eyelid," *see* Complaint, at 17, ¶ 21(d), represents the ultimate in the "tail wagging the dog."

What jury could resist the urge to conclude that a defendant who made such a cavalier statement regarding Mr. Spear's death, and, in doing so, inserted himself into the narrative regarding the circumstances of Mr. Spear's death, was not therefore responsible for the death?  Again, in light of the elements of the enhanced offense, which is not contingent on intent, the probative value of the government's evidence is nil, while its capacity for unfair prejudice is enormous and unavoidable, any limiting instructions notwithstanding.

24

The Advisory Committee's notes to Rule 403 define "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly though not necessarily, an emotional one." Thus, the Supreme Court has stated that unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

Here, Mr. Coll's alleged statement regarding "getting a tattoo of a teardrop" is the very definition of evidence that lures the factfinder into declaring guilt on a ground different from the proof offered, instead inviting the jury to decide the case on a purely emotional, and thus entirely improper, basis.

Accordingly, any evidence and/or reference to the alleged conversation between Mr. Coll and "Captain 2" should be precluded at trial.

**POINT IV**

**STATEMENTS MADE BY INMATES DURING THE ALTERCATION ARE INADMISSIBLE HEARSAY AND DO NOT FALL WITHIN ANY EXCEPTION TO THE HEARSAY RULES;  NOR ARE THEY ADEQUATELY RELIABLE OR SUFFICIENTLY PROBATIVE TO JUSTIFY ADMISSION ABSENT A VIABLE HEARSAY EXCEPTION**

The government has informed defense counsel that it intends to introduce certain statements made by inmates allegedly observing the incident giving rise to the charges herein. However, the hearsay rules preclude admission of those statements to prove the truth of the matter asserted within them. *See* Rules 801 & 802, Fed.R.Evid.

The statements at issue are detailed in the June 9, 2015, Complaint and are described

25

therein as follows: "the inmates – who were becoming agitated and had begun yelling things along the lines of 'what are they doing to him?' and 'they're going to kill him!' . . . [and] continued to shout things along the lines of 'they're kicking him!' and 'they're killing him!'." June 9, 2015, Complaint (hereinafter "Complaint"), at ¶¶13(i)-(j).

**A.      *The Excited Utterance and Present Sense
          Impression Exceptions to the Hearsay Rule***

Exceptions to the hearsay rule are contained in Rule 803, Fed.R.Evid.  The two provisions arguably relevant to the statements at issue here are the exceptions in Rule 803(1) and (2), respectively, encompassing "present sense impression" and "excited utterance."  Rule 803, Fed.R.Evid.[11]

Statements falling within exceptions to the hearsay rule are admissible because their nature demonstrates a degree of reliability justifying admission without the accompanying protection of confronting the declarant.  *See e.g. Brown v. Keane*, 355 F.3d 82, 90 (2d Cir. 2004) (an excited utterance is inherently reliable because it is made "in a moment of excitement-without the opportunity to reflect on the consequences of one's exclamation . . . [and such] assertions of fact are thought to be reliable because the declarant, in a state of excitement, is unlikely to muster the reflection necessary for fabrication");  *see also United States v. Jones*, 299 F.3d 103, 112 (2d Cir. 2002) (present sense impressions "are considered to be trustworthy

---

[11]  Hearsay evidence admitted pursuant to the residual hearsay exception at Rule 807, Fed.R.Evid., must meet five requirements: "trustworthiness, materiality, probative importance, the interests of justice and notice."  *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907–08 (2d Cir. 1991).  The exception is rarely used, and furthermore, as set forth **post** at 30 & n.12, the hearsay evidence here, in addition to being unreliable, is significantly less "probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts."  *Id*.

because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory").

Often, statements constituting excited utterances overlap with those that qualify as present sense impressions, particularly if the statements are immediately contemporaneous with the event they describe.  The primary difference between the two categories is the requirement that a statement of present sense impression is made during the event or "immediately thereafter," while excited utterances need not be instant as long as the excitement prompted by the event endures.  Rule 803(1) & (2), Fed.R.Evid.

When proposing admissibility under the excited utterance hearsay exception, the proponent of the statement must demonstrate:  "(1)  the occurrence of a startling event;  (2)  that the declarant made the statement while under the stress of excitement caused by the event;  and (3)  that the declarant's statement relates to the startling event."  *United States v. Delvi*, 275 F. Supp.2d 412, 415 (S.D.N.Y. 2003).

Encompassed within these requirements, and also applicable to admission pursuant to the present sense impression exception, is a demonstration by a preponderance of the evidence of the declarant's *personal observation* of the events referenced in his or her statement.  *United States v. Padilla*, 1995 WL 261513, at *4 (S.D.N.Y. May 3, 1995) ("[i]t is a condition precedent to admissibility of a statement under either exception that the declarant have personally observed the events described").

Consequently, the requirement that the proponent demonstrate that the declarant in fact observed the events at issue ensures that the "present sense impression" reflects "what the declarant has actually observed through the senses, not . . . what the declarant merely

27

conjectures." *Brown v. Keane*, 355 F.3d at 89.  Similarly, "[m]ere excitement . . . not coupled

with knowledge of the event described, adds nothing to reliability" and thus an "excited

utterance" is not "competent as evidence" unless it constitutes actual observations of the events

at issue.  *Id*.

**B.**     ***The Statements Are Not Admissible Under Either Hearsay
          Exception Because There Is No Evidence That the Inmates
          Making the Statements Personally Observed the Events Described***

As there is no information regarding which inmates made what statements, and more

importantly, no evidence that any of the inmates themselves observed the events described, the

statements cannot be admitted pursuant to either the excited utterance or present sense

impression exceptions to the hearsay rule.  *Cummiskey v. Chandris, S.A.*, 719 F. Supp. 1183,

1187 (S.D.N.Y. 1989), *aff'd*, 895 F.2d 107 (2d Cir. 1990) ("[w]hen there is no evidence of

personal perception, apart from the declaration itself, courts have hesitated to allow the excited

utterance to stand alone as evidence of the declarant's opportunity to observe").

According to the Complaint, after CW-1 saw CW-2 "bring Ronald Spear to the floor,"

he/she "turned back to the inmates in the dorm and moved away from the door."  Complaint, at

¶13(i).  The inmates began yelling things like "what are they doing to him" and "they're going to

kill him," and CW-1 ordered them to their beds.  *Id*.  The Complaint indicates that "some"

inmates were "kneeling and/or standing on their beds to get a view of what was going on in the

hallway."  *Id*.

Initially, because there is no information regarding which inmates made the statements or

the vantage point of any particular inmate, the declarants are "both unidentified and unavailable,

[and thus,] the burden [of establishing perception] is greater."  *Cummiskey*, 719 F. Supp. at 1187.

28

Therefore, that the inmates were "agitated," that "some" were trying to get a view of the incident by climbing on their beds, and that there were shouts of "what are they doing to him," undermines the assertion that the declarants, even if identified, were able to actually see the incident itself.  Nor could there be accurate or reliable testimony regarding precisely where each inmate was located, or what each inmate could see from that  specific vantage point.

The Complaint goes on to describe CW-1's vantage point after he/she "turned back around to see what was happening in the hallway."  Complaint, at ¶13(j).  At that point, while inmates "continued to shout things" like "they're kicking him" and "they're killing him," CW-1 was "standing further away from the door, . . . [and] no longer had a view of CW-2 or the inmate, []or . . . TAYLOR," but saw "COLL's upper body move . . . in a motion consistent with kicking."  *Id*.  The Complaint notes that, because of that limited view, CW-1 only "*assumed*" that CW-2, Mr. Spear and Officer Taylor "were still on the ground."  *Id*. (emphasis added).

The government's own evidence then demonstrates that the best view that any of the inmates *might* have had of the incident was the upper portion of Coll's body, and therefore, statements to the effect of "they're kicking him" and "they're killing him" are based entirely on conjecture and surmise as to what was happening *out of view*, and thus are neither excited utterances nor present sense impressions.

Accordingly, the evidence demonstrates that the government would be unable to prove, even by a preponderance of the evidence, that the unidentified inmates who made the statements at issue actually observed the incident.  Therefore, the statements constitute inadmissible hearsay not falling within the excited utterance or present sense impression exceptions to the hearsay rule.

**C.**    ***Additionally, the Statements Are Neither Reliable Nor
Probative, and Thus Inadmissible Pursuant to the
Reliability Analysis in* Ohio v. Roberts, 448 U.S. 56 (1980)*,
and As Unduly Prejudicial Pursuant to Rule 403, Fed.R.Evid.***

In order to admit the hearsay statements detailed **ante** absent an applicable hearsay

exception, the government bears the burden of demonstrating the declarant's unavailability and

that the statement "bears adequate indicia of reliability" in the form of "particularized guarantees

of trustworthiness." *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), *abrogated by Crawford v.

Washington*, 541 U.S. 36 (2004).

These guarantees "derive[] from the particular circumstances in which the statement was

made," *Brown v. Keane*, 355 F.3d at 87-88, and must compel a finding that the hearsay evidence

is "marked with such trustworthiness that there is no material departure from the reason of the

general rule." *Mungo v. Duncan*, 393 F.3d 327, 331 (2d Cir. 2004) (internal quotations omitted).

As a threshold matter, the government must demonstrate that the declarants are

unavailable, which presumably would require reliance on the fact that the particular declarants of

each statement were not identifiable from a crowd of "agitated" shouting inmates.[12]

Even if the government clears that obstacle, an assessment of that factor and the other

circumstances surrounding the hearsay statements clearly fails to provide the guarantees of

trustworthiness which would assure a Court that the statements may be admitted without the

concomitant protection of the Confrontation Clause. *See e.g. Ohio v. Roberts*, 448 U.S. at 63-64.

As set forth in the Complaint, the statements were made during scenes of chaos:  the

---

[12] Conversely, if the government *was* able to identify which individuals made the hearsay
statements, it is unlikely that it could demonstrate unavailability, given that all of the possible
declarants were inmates.

shouting did not begin until after "CW-1 witnessed CW-2 bring Ronald Spear to the floor," who were both out of sight once CW-1 moved away from the door to the hallway to wrangle the "agitated" group of inmates into their beds in the dorm.  Complaint, at ¶¶13(h)-(j).

As there is no basis to conclude that the declarants could see what was happening and furthermore, given the excitable nature of a crowd of inmates witnessing an out of the ordinary event, statements like "they're going to kill him" and "they're killing him" actually reflect the chaotic excitement of a group of riled inmates, rather than a reliable assessment of actual events.

This conclusion is amply supported by the description in the Complaint of CW-1's view of events once inside the dorm with the inmates and the fact that inmates were at the same time asking "what are they doing to him."  Complaint, at ¶¶ 13(i)-(j).  Also, the site was a medical dorm, and any specific inmate's eyesight, cognitive condition, and/or other mental health or medical problem would also be a factor affecting reliability, but which could not be gauged accurately in retrospect (particularly if the inmates are not identified).

Finally, even if the hearsay statements bore sufficient indicia of reliability required by the Supreme Court's decision in *Ohio v. Roberts*, which they plainly do not, the statements lack any probative value, are unduly prejudicial and therefore, are excluded pursuant to Rule 403, Fed.R.Evid.

As set forth **ante** at 5, 26, the shouts of unidentified inmates in an "agitated" crowd who are demonstrably unable to observe the events they are describing, are not probative evidence of what in fact occurred.  *See* **ante**, at 23-25.

Therefore, any minimal probative value of the hearsay statements (particularly, "they're going to kill him," "they're killing him") is overwhelmed by the unfair prejudicial effect of

presenting inflammatory and unreliable evidence to the jury.  Thus admission of the evidence would significantly interfere with the jury's ability to decide this case on a proper basis, and is precluded by Rule 403.

Accordingly, the hearsay statements at issue herein not only constitute unreliable hearsay not subject to any hearsay exception, but are also inadmissible as insufficiently probative of any material issue, and unduly prejudicial under Rule 403, Fed.R.Evid.

## CONCLUSION

For the foregoing reasons it is respectfully submitted that the instant motion be granted in all respects.

Dated:  New York, New York
         September 26, 2016

Respectfully submitted,
         /s/
_____
SAM A. SCHMIDT, ESQ.
115 Broadway Suite 1704
New York, New York 10006
(212) 346-4666
lawschmidt@aol.com

JOSHUA L. DRATEL, ESQ.
Joshua L. Dratel, P.C.
29 Broadway
Suite 1412
New York, New York 10006
(212) 732-0707
jdratel@joshuadratel.com

*Attorneys for Defendant Brian Coll*

 – Of Counsel –
Sam A. Schmidt
Joshua L. Dratel
Lindsay A. Lewis
Whitney G. Schlimbach

32