UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA             :

   -v.-                                                    :          S2 15 Cr. 360 (LAP)

BRIAN COLL,                                       :

                            Defendant.        :

------------------------------------------------------------x


## THE GOVERNMENT'S MOTIONS *IN LIMINE*


                                                         PREET BHARARA
                                                         United States Attorney
                                                         Southern District of New York
                                                         Attorney for the United States of America




Brooke E. Cucinella
Jeannette A. Vargas
Martin S. Bell
Assistant United States Attorneys
- Of Counsel -

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

UNITED STATES OF AMERICA                    :

    -v.-                                    :        S2 15 Cr. 360 (LAP)

BRIAN COLL,                                 :

                Defendant.                  :

-------------------------------------------------------------x
```

## THE GOVERNMENT'S MOTIONS *IN LIMINE*

The Government respectfully seeks rulings *in limine* on the following four issues in advance of trial.

**A.  THE COURT SHOULD ADMIT AUTOPSY PHOTOGRAPHS DEPICTING INJURIES TO RONALD SPEAR'S BRAIN**

The Government submits that it should be permitted to introduce certain photographs (the "Photographs") from the autopsy the Bronx Office of the Chief Medical Examiner for the City of New York conducted on Mr. Spear.  The Medical Examiner, whom the Government expects to call as a witness, ruled Spear's death a homicide and observed three recent contusions on his head consistent with blunt force trauma.  One of those contusions involved a bleed on the surface of the victim's brain, visible during the autopsy.  During the course of the autopsy, the Medical Examiner took several photographs of the surface of the victim's exposed brain.  Two of these images in particular, taken from the side of the brain and from above it, show the spread and depth of the bleed, respectively.  It is apparent, in these images, that the brain is still situated within the defendant's skull, which is visible at the margins of the picture.

The Government respectfully offers to submit the Photographs to the Court for *in camera* examination upon request.

a. **Applicable Law**

Federal Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *United States v. Al-Moayad*, 545 F.3d 139, 159 (2d Cir. 2008). "[T]he Second Circuit has made clear that the graphic or disturbing nature of a photograph alone is not enough to render it inadmissible." *Estate of Mauricio Jaquez v. Flores*, 10 Civ. 2881 (KBF), 2016 WL 1084145 (S.D.N.Y. Mar. 17, 2016), at *6 (internal quotation marks and citation omitted). Instead, the court's analysis must determine "whether the photograph is relevant to some disputed point at trial or otherwise aids a jury in a factual determination." *United States v. Salim*, 189 F. Supp. 2d 93, 98 (S.D.N.Y. 2002). Generally, even highly prejudicial evidence can be admissible if it proves an important proposition at trial. *See, e.g.*, *United States v. Lopez*, 572 F. App'x 1 (2d Cir. 2014) (upholding admission of uncharged murder in trial for drug distribution); *United States v. Willoughby*, 860 F.2d 15 (2d Cir. 1988) (upholding admission of bank robbery conviction in trial for witness tampering).

b. **Discussion**

The Photographs are properly admissible. They show the nature, extent, and severity of injuries suffered by Mr. Spear, issues directly relevant to a central disputed point at trial: whether the kicks sustained by the victim were sufficient to, and did, cause bodily injury and, further, his death, as charged in Count One of the Superseding Indictment. The Photographs are also clearly probative of the more basic issue of whether the defendant's treatment of the victim constituted excessive force, as further charged in Count One. As to each of these questions, common sense dictates that the best way for the jury to understand the extent of the blows allegedly inflicted by the defendant is to actually see, guided by the Medical Examiner, the damage done by the kicks.

The Government expects that the Medical Examiner will testify, in sum and substance, and among other things, that the victim was vulnerable to cardiac episodes, and that the blunt trauma cause by kicks to the head of the sort described by witnesses was a sufficiently stressful event as to prompt a fatal cardiac arrhythmia.  Evidence that the kicks were of sufficient force to cause a brain bleed and visible contusions, such as those depicted in the Photographs, is plainly relevant in demonstrating the stress the victim was subjected to during the incident that led to his heart attack.  The jury can reasonably infer from the brain bleed and the other visible evidence of contusions the nature and amount of the force applied.  That this evidence will be accompanied by the sober testimony of the Medical Examiner rather than in a vacuum minimizes the likelihood of a graphic image, taken alone, causing confusion or revulsion in isolation.  And while the pictures are nevertheless potentially disturbing, their graphic nature does not, on its own render them inadmissible.  Evidence that may upset or disturb a jury is not thereby inadmissible, *United States* v. *Salameh*, 152 F.3d 88, 123 (2d Cir. 1998), if the probative value of that evidence is not substantially outweighed by the evidence's negative qualities.  The probative value here is abundant, relating, as it does, the key disputed issues in the case as to Count One.

*United States* v. *Velasquez*, 246 F.3d 204 (2d Cir. 2011), is instructive here.  In that case, three prison guards were prosecuted for civil rights violations resulting from the severe beating of an inmate who was in poor health prior to his assault.  The cause of death was deemed internal bleeding from a ruptured spleen, which the medical examiner concluded was attributable to a blunt force injury sustained prior to death. *Id.* at 208-209. At trial, the Government introduced photos revealing the extent of the victim's bruising, and called upon fourteen witnesses to comment on them. *Id.* at 210. On appeal, the Second Circuit rejected the defendant's argument that the photos should have been rendered inadmissible under *Old Chief* v. *United States*, 519

3

U.S. 172 (1997) because the defendant was willing to stipulate that the beating occurred. The court found that the photos of the bruising were "legally and morally relevant," as the extent of the victim's injuries spoke to the issue of cruel and unusual punishment, as well as to a disputed issue over whether the victim had been coerced into later signing a cover-up report. *Id.* at 211. The *Velasquez* Court's affirmance of the trial court's use of the photographs to demonstrate coercion endorsed a substantially broader use of such evidence than the narrow causation and excessive force elements the Government seeks to establish presently.  The Court should therefore allow their admission.

B.  **THE COURT SHOULD ADMIT A CORRECTION OFFICER'S STATEMENTS CONCERNING THE EXCITED UTTERANCES OF INMATES**

The Government anticipates that a Correction Officer ("Correction Officer-1") who witnessed a portion of the defendant's assault and participated in the scheme to cover up certain facts about the incident, will testify that her attention was drawn to the altercation between the defendant and Mr. Spear in part by nearby agitated inmates with a view of the hallway where the assault occurred, who shouted, in sum and substance, "They're killing him!  They're killing him!"  The Government further anticipates that Correction Officer-1 will testify that she did not see the blows land herself, and that she later agreed to file a false and misleading Use of Force Report concerning the incident.  The Government submits that it should be permitted to elicit from Correction Officer-1 her account of the inmates' shouts, as it both (a) satisfies the hearsay exceptions for both excited utterances and present sense impressions, and (b) is, at a minimum, admissible for a purpose other than proving the truth of the matter asserted – that is, to explain her subsequent actions.

4

### a. Applicable Law

The Federal Rules of Evidence define admissible present sense impressions as statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed. R. Evid. 803(1). Such statements are considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory. *See United States* v. *Brewer*, 36 F. 3d 266, 272 (2d Cir. 1994). Relatedly, though distinctly, the hearsay exception for excited utterances covers statements relating to a starting event or condition made while the declarant was under the stress of excitement caused by the event or condition. Fed. R. Evid. 803(2). Those statements, too, carry the mark of trustworthiness because, as the Second Circuit has explained, "the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability." *United States* v. *Tocco*, 135 F.3d 116, 127 (2d Cir. 1998).

### b. Discussion

The statements at issue clearly fall within two recognized exceptions to the rule against hearsay: the exceptions for present sense impressions and excited utterances. The events relayed by the inmate were certainly startling enough to support application of the excited utterance exception. That they related to a contemporaneous, startling event is clear: by their own terms, the remarks are contemporaneous, and the inmates were witnessing a forceful attack on one of their number by an individual whose job it was to care for them and under whose control they were situated at the jail. So, too, are the criteria for a present sense impression also met: they narrated the event as it occurred. This combination of circumstances therefore "clearly justif[ies]

invocation of either the present sense impression or excited utterance exceptions to the hearsay rule." *United States* v. *Jones*, 299 F.3d 103, 113 (2d Cir. 2002).

The Court's analysis can and should end there, particularly given that the testimony's coverage under firmly rooted exceptions to the hearsay rule provide a more than sufficient guarantee of their trustworthiness. *See*, *e.g.*, *Idaho* v. *Wright*, 497 U.S. 805, 815 (1990) ("Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception."). But the Government respectfully submits that the Court can also admit the statements for a separate reason, distinct from the truth of the matter asserted – specifically, their effect on the listener, Correction Officer-1. The Government anticipates that Correction Officer-1 will testify that while she could see the defendant making movements consistent with possible kicking during the assault, she did not have a view of the kicks landing. Having heard the inmates' contemporaneous description of the severity of the kicks ("They're killing him!"), she would have had an added insight into the relative likelihood that those kicks caused the victim's death. This knowledge would have further motivated her to agree, as she did, with other Correction Officers, including the defendant, to cover up what had taken place. The statements therefore serve a purpose – demonstrating Correction Officer-1's motive as a co-conspirator – separate and apart from the truth of the matter asserted, even though they should be admitted for that purpose under the applicable hearsay exceptions as well.

C. **THE COURT SHOULD PRECLUDE CROSS-EXAMINATION OF THE GOVERNMENT'S INMATE WITNESSES REGARDING THEIR PRIOR CRIMINAL CONDUCT**

Next, the Government submits that defense counsel should be prohibited from cross-examining certain inmate witnesses about their prior convictions for violent or serious acts – none of which bear on the witnesses' credibility or penchant to be truthful, nor are in any way

6

relevant to the issues the jury must decide.  The Government intends to call certain witnesses who were housed in the infirmary dorm with Mr. Spear in December 2012 to testify about their observations of interactions between Mr. Spear and the defendant leading up to the day of the assault, as well as what they each saw and heard on the morning of December 19, 2012 and the days following.  The crimes for which they are incarcerated, to the extent they do not bear on the witnesses's truthfulness, are irrelevant to their testimony, and in certain circumstances – especially where the inmate witness is incarcerated for murder, robbery or firearms offenses – may lead to unfair prejudice against that witness that will distract the jury from the real issues at hand.  Accordingly, the Government seeks to preclude the defense from questioning these witnesses about the details of their prior convictions.

The Government does not, at this point, know which witnesses, if any, the defense may seek to cross examine in this vein.  We make this motion, in large part, to apprise the Court of the relevant law and the Government's view that we do not believe such lines of examination are proper here.  The Government will be ready to respond to specific arguments of this sort as they are advanced by the defense.

### A.     Applicable Law

It is well settled that "the scope and extent of cross-examination lies within the sound discretion of the trial judge."  *United States* v. *Scarpa*, 913 F.2d 993, 1018 (2d Cir. 1990).  As the Supreme Court has held:

> [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination [of a prosecution witness] based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.  And as we observed earlier this term, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross examination that is effective in whatever way, and to whatever extent, the defense might wish."

7

*United States* v. *Van Arsdall*, 475 U.S. 673, 679 (1986) (citation omitted) (emphasis in original); *accord United States* v. *Laljie*, 184 F.3d 180 (2d Cir 1999).  In this regard, "a trial judge does not abuse his discretion by curtailing cross-examination as long as the jury has sufficient information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government." *Scarpa*, 913 F.2d at 1018 (quotation omitted).  Similarly, "'[t]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witnesses' safety, or interrogation that is repetitive or only marginally relevant.'"  *United States* v. *Crowley*, 318 F.3d 401, 417 (2d Cir. 2003), cert. denied, 124 S. Ct. 239 (2003) (quoting *Van Arsdall*, 475 U.S. at 679).

Rule 608(b) of the Federal Rules of Evidence limits cross-examination regarding "specific instances of a witness's conduct" to situations where the conduct of the witness was "probative of the [witness's] character for truthfulness or untruthfulness."  Fed. R. Evid. 608(b).  Thus, Rule 608(b) "'does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness.'"  *United States* v. *Schlussel*, No. 08 Cr. 694 (JFK), 2009 WL 536066, at *3 (S.D.N.Y. Feb. 27, 2009) (quoting *United States* v. *Nelson*, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005)).  Moreover, "Fed. R. Evid. 608(b) prohibits a party from presenting 'extrinsic evidence' of '[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility' unless that conduct was the subject of a criminal conviction."  *United States* v. *Crowley*, 318 F.3d 401, 417 (2d Cir. 2003).

Rule 609 of the Federal Rules of Evidence sets forth the rubric for impeachment by evidence of a criminal conviction.

With respect to convictions within the last ten years (or a conviction resulting in confinement within the past ten years), they (1) may be admitted to "attack a witness's character for truthfulness" if the crime was punishable by more than one year's imprisonment, and the admission is not barred by Federal Rule of Evidence 403; and (2) must be admitted for this purpose "for any crime regardless of the punishment . . . if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a).  The party "desiring to take advantage of automatic admission of a conviction under the second prong must demonstrate to the court that a particular prior conviction rested on facts warranting the dishonesty or false statement description." *United States* v. *Hayes*, 553 F.2d 824, 827 (2d Cir. 1977) (internal quotation marks omitted).  Older convictions are admissible only if: "(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b).  Here, as described below, the majority of the conduct at issue falls within under 609(a)(1), which means the Court *may* admit the conviction if it finds that the 'probative value [of the testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" Fed. R. Evid. 403. Accordingly, here, the Court must assess for each of the convictions the defense seeks to introduce whether the jury will be distracted or prejudiced against the witness by the introduction

9

of, for example, a murder conviction, which has little to no relevance to the issue they must decide.[1]

Finally, Rule 611 of the Federal Rules of Evidence further instructs that a court should "protect witnesses from harassment or undue embarrassment," and that cross-examination "should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility." Fed. R. Evid. 611.

### B. Witness Criminal History

The Government has reviewed the criminal history records (commonly referred to as "rap sheets") of its potential inmate witnesses, and learned of the following criminal history for each of these individuals who was incarcerated on Rikers Island at the time of the Mr. Spear's death. To the extent the Government has had the opportunity to interview these witnesses about their prior bad acts, additional details are included herein.[2]

*1) Inmate-1*

Inmate-1, who is presently incarcerated, has the following prior convictions: On or about July 10, 2009, Inmate-1, was convicted of attempted criminal possession of a firearm, and sentenced to two years' imprisonment and two years' post-release supervision time. On or about

---

[1] During discussions that took place in advance of filing these motions, defense counsel suggested that they may not seek to introduce all of the witnesses prior convictions. By producing early 3500 material, we are hopeful that the defendant will clarify their position on what convictions they seek to introduce in their opposition, and that the parties may reach an agreement with respect to certain convictions. If that happens, the Government will notify the Court promptly.

[2] The Government does not have agreements with these witnesses (*e.g.*, a cooperation or non-prosecution agreement) and is presently unaware of any information suggesting that the other offenses of which they convicted involved conduct probative of truthfulness. To facilitate the defense's ability to respond to this motion, however, the Government will, within two days of this submission, provide their rap sheets, and any other information subject to disclosure pursuant to *Giglio* v. *United States*, 405 U.S. 150, 154 (1972), and its progeny, and will continue to do so on a rolling basis as the Government meets with its potential witnesses. The Government continues to look into the criminal backgrounds of these potential witnesses, and will fulfill its disclosure obligations as more information becomes known.

September 19, 2011, Inmate-1's parole was revoked, and he was incarcerated again – this time at a drug treatment facility – until January 3, 2012. Beginning on or about January 3, 2012, Inmate-1 also had an order of protection against him, stemming from what appears to have been a domestic dispute.  On or about April 3, 2012, Inmate-1 was convicted of robbery in the third degree (a Class D felony), and sentenced to a term of 2 to 4 years' imprisonment.

    *2) Inmate-2*

Inmate-2 is presently serving a sentence of 17 years to life, indeterminate, for the intentional murder of his wife's 17-year old female lover.  He was convicted on or about May 2, 2013.  Prior to that, on or about  September 29, 2010, inmate-2 was convicted of assault in the third degree, a Class A misdemeanor, and sentenced to abide by an order of protection for 75 days.  It is believed that the September 29, 2010 assault also related to a domestic situation.

    *3) Inmate-3*

Inmate-3, who is not presently incarcerated, was convicted on or about July 1, 2013, of the following crimes: second degree robbery (aided by another), second degree robbery (motor vehicle), third degree grand larceny, third degree possession of stolen property, fourth degree grand larceny (motor vehicle),  fourth degree criminal possession of stolen property, and unauthorized use of a vehicle (without the owner's consent).  For all of these crimes, Inmate-3 was sentenced to  35 to 42 months' incarceration and 30 months' post-release supervision.

    **4)    Discussion**

The defendant should not be allowed to cross-examine the Government's inmate witnesses about their prior bad acts or about any of the violent or salacious details surrounding the events that led to their convictions, because none of the convictions bear on the credibility of the witnesses nor on any issue the jury will be asked to decide. While each of the potential

11

inmate witnesses have a conviction that falls within Rule 609(a), none is indicative of truthfulness.[3]  Thus, the probative value of the evidence is low, while the risk of prejudice – especially with respect to crimes of violence or possession of firearms – is exceedingly high.

The Second Circuit has explained that, "[i]n defining 'dishonesty or false statement' for purposes of Rule 609(a)(2), the Conference Report on the Federal Rules emphasized that it was referring to convictions 'peculiarly probative of credibility,' such as those for 'perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi*, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on [a witness's] propensity to testify truthfully.'" *United States* v. *Estrada*, 430 F.3d 606, 614, 616 n.3 (2d Cir. 2005) (quoting H.R. Conf. Rep. No. 93–1597, 2d Sess., at 9 (1974), reprinted in 1974 U.S.C.C.A.N. 7098, 7103).  The types of convictions at issue here—murder, assault or other violent offenses, weapons possession, robbery, property offenses, and driving offenses—have no apparent connection with dishonesty or false statements.  Accordingly, without an articulation of a proper purposed from the defense, none of these convictions is an appropriate matter for cross-examination pursuant under Rule 609(a)(2).  Even if they were admissible under Rule 609(a)(1) -- or facts underlying them were admissible under Rule 608 – such cross-examination should be barred under Rule 403, especially with respect to those convictions that involve violence, or other serious misconduct.  *See, e.g.*, *Estrada,* 430 F.3d at 617-18; 28 Charles Alan Wright & Victor James Gold, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6134 (1993) (noting that for "particularly depraved and offensive

---

[3]  The Government recognizes that, depending on the facts, larceny may be considered a crime of dishonesty.  Given the facts as we now know them, we do not have reason to believe that the facts underlying Inmate-3's prior conviction fall into this category, but we will keep defense counsel and the Court apprised of any new developments with respect to this issue, and will turn over 3500 material relating to this issue on a rolling basis.

acts, such as wanton violence or sexual immorality, the jury is likely to draw the prejudicial inference that the witness is a bad person while at the same time the jury may derive little probative value from the conviction since these crimes say little about credibility"); *see also United States* v. *Devery*, 935 F. Supp. 393, 408 (S.D.N.Y. 1996) ("[T]he loathsomeness of prior misconduct does not necessarily bear on the perpetrator's capacity for truth-telling.").

Indeed, the Second Circuit has repeatedly affirmed preclusion of cross-examination with respect to convictions for a range of serious offenses, including murder, where, as here, there is no basis to conclude that the offense involved dishonesty. *See, e.g.*, *United States* v. *Jeffers*, 402 F. App'x 601, 603 (2d Cir. 2010) (affirming preclusion of cross-examination regarding prior domestic violence; "We identify no abuse of discretion in the district court's determination that the purported prior acts of violence were not probative of [the witness's] credibility."); *United States* v. *Flaharty*, 295 F.3d 182, 190-91 (2d Cir. 2002) (affirming preclusion of cross-examination regarding murder because "[m]urder generally is not a crime of dishonesty, and nothing about the . . . murder suggested that it would in any way reflect on [the witness's] truthfulness"); *United States* v. *Salameh*, 152 F.3d 88, 131-32 (2d Cir. 1998) (affirming preclusion of cross-examination regarding robbery, assault, and sodomy because they were too remote in time and not probative of veracity); *United States* v. *Rosa*, 11 F.3d 315, 336 (2d Cir. 1993) ("Nor was it an abuse of discretion to exclude evidence of certain types of acts such as rape and burglary as having an insufficient bearing on the witness's credibility"); *United States* v. *Rabinowitz*, 578 F.2d 910, 912 (2d Cir. 1978) (affirming preclusion of cross-examination regarding "prior acts of sodomy upon young children" because such acts did not bear on credibility); *accord, e.g.*, *United States* v. *Turner*, 104 F.3d 217, 223 (8th Cir. 1997) ("Misconduct involving violations of narcotics laws is not an act involving dishonesty or

untruthfulness and therefore may not be inquired into under Federal Rule of Evidence 608(b)."); *United States* v. *Miles*, 207 F.3d 988, 993 (7th Cir. 2000) ("crimes such as 'murder, assault, [and] battery' may be probative of violence, but they do not normally bear on a witness's reliability for telling the truth") (quoting *Varhol* v. *National R.R. Passenger Corp.*, 909 F.2d 1557, 1567 (7th Cir. 1990) (en banc)); *United States* v. *Sellers*, 906 F.2d 597, 603 (11th Cir. 1990) ("[C]rimes such as theft, robbery, or shoplifting do not involve 'dishonesty or false statement' within the meaning of Rule 609(a)(2).").

Additionally, it is worth noting that, by barring cross-examination with respect to the inmate witnesses' prior violent criminal conduct, the defendant will not be precluded from lines of questioning that could establish potential bias relating to the witness's prior (or current) status as an inmate. The jury will necessarily be presented with evidence that each witness was incarcerated as a result of one or more criminal charges—both because each will testify that he was incarcerated at Rikers Island, and because two of the three are presently detained. Accordingly, prohibiting cross-examination on the witnesses' underlying convictions will not prevent the defendant from making arguments relating to each that the witness has experience with, and, in the defendant's view, may be biased against, correction officers. Nor does the Government object to the defendant pursuing such a line of cross-examination, that is, questioning each witness as to whether he is biased against correction officers, based on past experience – a line of cross-examination that may necessarily entail questioning regarding the extent of each witness's current and/or prior time spent in custody (although the Government submits that the Court should exercise its authority under Rules 403 and 611 to ensure that such questioning is reasonable in scope).

For the foregoing reasons, the Government submits that, when assessing probative value of a particular conviction on a witness's propensity for truthfulness in light of the risk of prejudice, confusion, and delay, the risk of prejudice with respect to murder convictions and convictions of violence is high, and seeks the narrow ruling that, based on the information known at this time, in the context of this case, the convictions involving violence or firearms that led to each witness being incarcerated should not be not admitted because the additional probative value of such evidence is low, and the risk of unfair prejudice, particularly with respect to convictions involving violence, is substantial.

### D. DEFENSE COUNSEL SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF RONALD SPEAR'S CRIMINAL HISTORY

Finally, the Government moves to exclude any reference to Ronald Spear's prior criminal history or criminal convictions. The Government will introduce the fact that Mr. Spear was incarcerated on Rikers Island and that he was a pretrial detainee, which are the only facts relevant to the jury's determination – allowing the defense to engage in tactics to put anything other than these facts before the jury is to allow them to engage in impermissible victim-shaming, and should be prohibited.

#### A. Applicable Law

In general, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion ...." Fed. R. Evid. 404(a)(1). Evidence of a "pertinent" character trait of the victim may be introduced pursuant to Fed. R. Evid. 404(a)(2). Although Rule 404(a)(2) "allows a criminal defendant to introduce pertinent traits of an alleged victim's character, Rule 403 vests the district court with broad

15

discretion to exclude such evidence when outweighed by the danger of undue delay or confusion." *United States* v. *Schatzle*, 901 F.2d 252, 256 (2d Cir. 1990).

### B. Argument

Mr. Spear's prior criminal conduct does not evince a "pertinent" character trait in connection with this trial, and therefore is inadmissible under Fed. R. Evid. 404(a)(1). Permitting evidence of any of Mr. Spears' prior criminal conduct – the majority of which involves convictions for larceny or petit larceny (including stealing over the counter medications and blood pressure cuffs, among other things), drug possession, and two incidents of assault in 2006 in connection with domestic disputes[4] – would be unduly prejudicial and could unfairly bias the jury against Mr. Spear. Further, introducing evidence of Mr. Spear's prior criminal conduct or convictions would engender jury confusion, including the inappropriate consideration of the irrelevant character traits of a victim when considering the evidence of the defendant's guilt. Accordingly, the Court should use its discretion and prohibit defense counsel from trying to introduce irrelevant information about the defendant's criminal history in an effort to improperly prejudice the jury.

***

---

[4] The Government submits that the age of these arrests—both of which took place in 2006, approximately 10 years before the start of this trial and 6 years before Mr. Spear was assaulted and killed, and neither of which resulted in convictions – as well as the domestic nature of the incidents seriously diminish any probative value that an assault conviction may otherwise have.

## **CONCLUSION**

For the foregoing reasons, the Government's motions *in limine* should be granted.

Dated: New York, New York
September 26, 2016

Respectfully submitted,

PREET BHARARA
United States Attorney

By: /s/_____
Brooke E. Cucinella
Jeannette A. Vargas
Martin S. Bell
Assistant United States Attorneys
(212) 637-2477/2678/2463