GC1sCOL1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          15 CR 360 (LAP)

5   BRIAN COLL,

6                  Defendant.

7   ------------------------------x

8                                          New York, N.Y.
                                           December 1, 2016
9                                          11:35 a.m.

10

    Before:
11
                        HON. LORETTA A. PRESKA,
12
                                           District Judge
13

14                        APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    BROOKE CUCINELLA
17  JEANNETTE A. VARGAS
    MARTIN BELL
18       Assistant United States Attorneys

19  SAM A. SCHMIDT
    JOSHUA L. DRATEL
20       Attorneys for Defendant

21  ALSO PRESENT:
    MELISSA DANZO, Paralegal
22  ANTHONY LUPINACCI, Agent

23

24

25

GC1sCOL1

```
 1              (In open court; jury not present)

 2              THE COURT:  The jurors are ready for us, but I thought

 3    we would discuss how we are going to do this and decide whether

 4    to send them to lunch or not.

 5              It seems you have followup questions for 928 of them.

 6    We are getting the numerical list.  We will cross off the ones

 7    who have already been stricken by you people.  Then the next

 8    order of business, it seems to me, is to start at one and do

 9    whatever followup questions we have, to be sure we eventually

10    get the first 32 in a row, right?

11              Is that all right with you?

12              Tell me why we have so many followup questions and how

13    are we going to figure out what they are.

14              MS. CUCINELLA:  Your Honor, during the process

15    yesterday in reviewing the questionnaires, there were a number

16    of people where, if they indicated that they may have trouble

17    being fair and impartial, the reason they gave for it is the

18    type of answer that, in a typical voir dire, you would ask a

19    followup question.

20              THE COURT:  Like what?

21              MS. CUCINELLA:  Let me find an example.

22              Question number eight in juror questionnaire one says,

23    do you have any opinion about the enforcement of the laws

24    protecting inmates that might prevent you from being fair and

25    impartial in this case?
```

GC1sCOL1

1          Answer, yes.

2          If yes, please explain.

3          I have concerns about the protections of prisoners'

4     civil rights when they are in correctional institutions.

5          That does not preclude someone from necessarily

6     sitting on this jury.

7          THE COURT:  How are we going to figure out what the

8     followup question has to be?

9          MS. CUCINELLA:  I think that the question would be, in

10    this situation --

11         THE COURT:  I know.

12         How are we going to do it as we go through without

13    taking 20 years?

14         MS. CUCINELLA:  The way it has gone when I used a

15    questionnaire in the past is we actually have done it in the

16    robing room.  I know defense counsel, and we both have our

17    issues for followup on our specific lists.

18         We can inform your Honor of them in between jurors

19    coming in, raise the issues with you.  And then when the

20    individual juror comes to the robing room, your Honor can then

21    inquire of them, and that way it is out of the presence of the

22    rest of the panel, and hopefully we can do it quickly.

23         THE COURT:  OK.  Off the record.

24         (Discussion off the record)

25         MS. CUCINELLA:  Your Honor, we would also note that

GC1sCOL1

1    some of them may go pretty quickly because it is a hardship

2    question versus one of the more difficult questions to get at.

3    Some may move quite fast.

4            THE COURT:  All right.  All right.  Do we want to

5    start now getting ready, or do you think it is going to go fast

6    enough that we can just do it individually?

7            MS. CUCINELLA:  What do you mean?

8            THE COURT:  Do you want to tell me now what the

9    questions are that you feel should be asked to, say, the first

10   half or so of them or whatever?

11           Because we have to do that.  Eventually we will have

12   32 we agree on in the box, and then we will do the kind of law

13   questions that you had in 23 and 24, I think, and then the

14   individual questions.

15           MS. CUCINELLA:  That makes sense.

16           THE COURT:  Right.

17           Mr. Dratel.

18           MR. DRATEL:  Thank you, your Honor.

19           What we did in an e-mail last night -- I don't know if

20   it went to the court, I think it just went to the government

21   when we reviewed this, but I can easily forward it to the

22   court -- which is we enumerated the questions that we think

23   merit followup for each specific questionnaire.  And the reason

24   we did so is mostly just deal-breaker questions, really, in

25   terms of a lot of it is -- question six, there is an incredible

GC1sCOL1

saturation of --

        THE COURT:  Which one is it, please.

        MR. DRATEL:  The media.  Essentially, what have you

heard about Rikers Island.  Some of it is, four, which is what

you heard about this case.  There is a lot of conflation in

this case, potentially, in the jurors' minds.

        For example, some said, you know, there was a case

where someone committed suicide on Rikers Island.  I don't know

if it is this case.  Someone was beaten to death by guards.  It

is not this case, I think.  I think it is a case Upstate.

        This is stuff in the papers so regularly that it's an

important question for us, obviously.

        Then the other ones that I think that we enumerated

when people had concerns, questions, was certainly 22, 23 and

24, can you be fair, is there anything about the case that you

couldn't return a verdict for guilty or anything else that

would make you unfair.  So anybody who waffled on that, we

identified them.

        Also, I think the other ones, you know, there was

some, like, would you believe law enforcement over other

witnesses.  That one we identified.

        Anybody who said that they knew lawyers and people

in law enforcement or prosecution and said that they didn't

discuss, I did not put an answer yes as to both.  Yes, I know

them and yes they tell me about their job.  I thought we should

GC1sCOL1

1   get more information from them in a private setting so we don't

2   find out that they're already predisposed, and at the same

3   time, you know, say it in front of other jurors things they

4   heard about the business, so to speak.

5           MS. CUCINELLA:  If Mr. Dratel wants to forward that

6   list to the court, our editions are only three or four.  And we

7   had just gone about it differently, where we highlighted issues

8   rather than, necessarily, than the actual questions.

9           But we can go through and tie those questions, and

10  that will probably take us only ten minutes, because we, I

11  believe, only have three editions to their list.

12          THE COURT:  But the list is still this long list.

13          MR. DRATEL:  Yes.

14          THE COURT:  All right.  Well, I guess that's just the

15  thing to do.

16          The jurors will be returning here at one o'clock.

17          We can just call them by juror number, right?  Do they

18  know their juror numbers, or can you match them up?  We can

19  match them up.

20          MS. CUCINELLA:  We have the list.

21          THE COURT:  We can match them up with the list.

22          MR. SCHMIDT:  Your Honor, I have a question.

23          THE COURT:  Sir.

24          MR. SCHMIDT:  Instead of going through all, the whole

25  list of our --

GC1sCOL1

1       THE COURT:  Absolutely.  We are just going to do the

2   first 32.

3       MR. SCHMIDT:  I mean, normally when you get 100

4   people, the way you select them is by drawing out a number.

5       THE COURT:  They have already been randomized

6   downstairs.  That is where the numbers came from.  The numbers

7   were assigned in the order they checked in, so that is

8   completely random.  So we don't have to draw anymore.

9       MR. SCHMIDT:  OK.

10      THE COURT:  We will start --

11      MR. SCHMIDT:  The first 32 are going to be seated

12  1 through 32 -- not 1 through 32 anymore -- but the first

13  32 numerically, right?

14      THE COURT:  Right.  And then we will start in order

15  asking the followups to the ones you have designated to be

16  asked.  And then when we get 32, then we will start with the

17  law questions, and then we will go to the individual questions.

18  We still have plenty of spares in case anyone gets stricken

19  from you.

20      What else?

21      Why don't you come back at quarter to one, and we will

22  get ourselves lined up with the first couple of them, and then

23  we will get going as soon as they're here.

24      All right.  Thank you, friends.

25      (Luncheon recess)

GC1sCOL1

```
 1                          AFTERNOON SESSION

 2                              12:55 p.m.

 3              (In open court; jury not present)

 4              THE COURT:  I have the government's e-mail about

 5     jurors it would like to have questioned.

 6              I take it, when we are in the robing room, you will

 7     have the jurors' questionnaire with you so that, for example,

 8     on Juror No. one it says, please ask about question 20.

 9              Well, I guess I want to know what the answer given

10     was, right?

11              MS. CUCINELLA:  I have an extra set of them that I

12     believe we can give to your Honor if you would like to have a

13     set of them.

14              THE COURT:  Thank you.

15              Counsel, may I ask you about another question or two.

16              We generally ask jurors, aside from service in the

17     armed forces, are you now or have you ever been an official or

18     employee of the United States Government, the state, city,

19     local government, etc., have you applied for a position in

20     government, do you have any dealings with the U.S. government

21     for which you profit.

22              I didn't see those questions in my list.  Is there any

23     objection to my asking them

24              MR. DRATEL:  No, your Honor.

25              MR. SCHMIDT:   no.
```

GC1sCOL1

1            MS. CUCINELLA:  Anyone from the government?

2            MR. DRATEL:  Your Honor, just to make sure, did you

3    receive our e-mail with respect to the enumerated questions?

4            THE COURT:  Sir?

5            MR. DRATEL:  With respect to the questions for

6    particular jurors, we sent it.

7            THE COURT:  How am I supposed to know, on juror one,

8    question 6, 8, 17, 18?

9            MS. CUCINELLA:  I have a complete set that I can give

10   you.

11           THE COURT:  All right.  This is not going to be good.

12           You people are going to have to be on top of this when

13   we're in the robing room.

14           MR. DRATEL:  Yes.

15           THE COURT:  Because otherwise it is going to take us

16   four days.

17           MR. DRATEL:  No, I understand, your Honor, that's item

18   we enumerated specific questions.

19           THE COURT:  We have to know what the answers were

20   before I know what questions to ask them, you know what I mean?

21           MR. DRATEL:  Yes.

22           THE COURT:  Counsel, my thought that was we would

23   bring them all in, just sit them down and say we had followup

24   questions for some of the jurors, which would be done in the

25   robing room.  And then when that is completed, we will have

GC1sCOL1

1    questions for all of the jurors.

2              Of course, you and I know that will be the first 32,

3    but just so they know what is going on.

4              Any objection to that?

5              MS. CUCINELLA:  No, your Honor.

6              MR. DRATEL:  No, your Honor.

7              THE COURT:  Can I ask you something, folks?

8              For number two, have you ready about the case?

9              Yes, have you read newspaper stories about prisoner

10   abuse at Rikers.  Can't say is/was this case.

11             Have you drawn any conclusions, etc.?

12             No.

13             What do I ask him?

14             MR. DRATEL:  Whether he can understand it's not this

15   case, or if it is this case, as to whether there is an opinion

16   and whether --

17             THE COURT:  He says he has drawn no opinion, question

18   five.

19             MR. DRATEL:  But what he knows in terms of facts and

20   whether he would bring any of them that in.

21             THE COURT:  I am not going to ask him what he knows.

22   At most, I can ask him if there is anything he has read that is

23   going to keep him from being fair and impartial in this case.

24   But I even wonder why I have to do that if he has already said

25   he has no conclusions.  In fact, I don't even know why I have

GC1sCOL1

```
 1    to do that.

 2              The question asked was, have you drawn any conclusions

 3    or opinions about this case based on what you have seen, heard,

 4    or read that you think would impact your ability to be a fair

 5    and impartial juror in this case?

 6              Answer, no.

 7              There is no reason to ask him the question again.

 8              MR. DRATEL:  I think that someone who says they have

 9    read stories about Rikers and they don't know it is about this

10    case, I think we should know what they know about this case

11    before we make a decision about it.

12              THE COURT:  There is a different question about that.

13    There's a more specific question asking about Mr. Coll,

14    Mr. Spear, or something like that.

15              MR. DRATEL:  There is also question eight, do you have

16    an opinion about the enforcement of laws protecting inmates

17    that might prevent you from being fair and impartial in this

18    case?

19              I am of the opinion that COs are often abusive.

20              That, to me --

21              THE COURT:  I wasn't asking you about that question.

22              MR. DRATEL:  All I mean, Judge, is those two go

23    together in my mind.  It is hard to disconnect the two, four

24    and eight.

25              THE COURT:  I am just telling you, I am not going to
```

GC1sCOL1

1    ask these people what they know.  They'll sit there and talk to
2    me for three hours.  That is not the point.
3          The point is can they focus and base their decision
4    only on what they hear here in the courtroom.
5          MR. DRATEL:  But, your Honor, it is important for us
6    to know, in exercising even peremptories, what the level -- and
7    for prosecutors, too -- what the level of someone's familiarity
8    with the actual details of this case.
9          THE COURT:  At the end of the day, the fact that they
10   read newspaper articles is not the issue.  The issue is whether
11   they can be fair and impartial, right, base their decision only
12   on the evidence they hear in the courtroom and the court's
13   instructions on the law.
14         MR. DRATEL:  As a question of whether they are
15   challengeable for cause, that's the ultimate question.  As to
16   whether they can be fair or not, I think for purposes of
17   exercising peremptories, that we should know what it is they
18   know.
19         I'll just give you a hypothetical in the sense of
20   something that I don't know if everyone is familiar with.  It's
21   the most graphic one I can think of.  It is the most dramatic
22   one I can think of.
23         Let's say this is the John DeLorean trial.  Someone
24   said, yes, I heard about it on the news, and what they actually
25   saw was the 60 Minutes piece.  That was the most damaging piece

GC1sCOL1

1    that turned the entire trial against the defendant.  When he

2    actually got to trial, he got acquitted.  I would want to know

3    if that was what the person saw.  Then I would know what I was

4    up against with that juror.

5          MR. SCHMIDT:  If I may say one thing, your Honor?

6          The government intends to offer an article from the

7    *Village Voice* about this case that was recovered from my

8    client's home.  So while it is going to be redacted

9    substantially, I mean, if they have knowledge of that article,

10   in other words, what they have read might be, to some extent,

11   relevant.

12         THE COURT:  But I don't see that it is appropriate to

13   ask them to report everything they have read and know about the

14   case.

15         And this guy, this is Juror No. two, again, he's read

16   newspaper articles about prisoner's abuse but can't say if it

17   was in this case.

18         Have you drawn any opinions that could keep you from

19   being fair?

20         No.

21         MR. SCHMIDT:  Your Honor, one other point, I think,

22   that an appropriate question would be --

23         THE COURT:  Tell me what question you want on this,

24   other than what have you read.

25         MR. SCHMIDT:  You mean number two?

GC1sCOL1

1           THE COURT:  Yes.

2           MR. SCHMIDT:  I'm actually willing to skip over number

3    two and go to number eight.

4           I would like to know --

5           THE COURT:  Question number eight?

6           MR. DRATEL:  Question --

7           MR. SCHMIDT:  In question eight, basically, what has

8    he based his opinion on.

9           THE COURT:  Well, I would rather ask him, do you

10   understand, first of all, that you may base your decision only

11   on the evidence you hear in the courtroom and the court's

12   instructions on the law?

13          Yes.

14          Given your opinion here, can you assure us that you

15   will be a fair and impartial juror and do that?

16          MR. SCHMIDT:  I understand, your Honor.  But it is

17   important for us to, I think, understand if he says his opinion

18   is based on reading articles, that's one thing.  If he said his

19   opinion is based on his friends who served time in Rikers

20   Island, talking to him about it, that is something very

21   different.

22          THE COURT:  All right.  I think we might as well get

23   going here, but I just hope you people are really ready to tell

24   me what you want to ask.

25          (Pause)

GC1sCOL1

1              How come we didn't bounce number seven who has a

2     vacation plan on December 18?

3              MS. CUCINELLA:  We believed that we would be done by

4     then.  If your Honor thinks that that is too close, we can

5     agree to that.

6              THE COURT:  Well, what day is the Monday?

7              MS. CUCINELLA:  The 12th.

8              THE COURT:  Of Christmas?

9              MS. CUCINELLA:  The 19th is the Monday before

10    Christmas.

11             THE COURT:  Which is when I thought you would finish.

12             MS. CUCINELLA:  We will be shocked if it goes that

13    long.  We know that their expert can't testify until Tuesday,

14    the 13th, but we anticipate we will be closing by the 14th.

15             MR. SCHMIDT:  Your Honor, what we did is, we assumed

16    that Wednesday is going to be, in other words, the closing.

17             THE COURT:  That's fine.

18             MR. SCHMIDT:  Just in case the juror was still

19    deliberating or something happened, we were willing to excuse

20    that juror.

21             THE COURT:  I'm looking at number nine.

22             Have you formed any opinion about Rikers Island

23    Correctional Facility based on what you have seen, heard or

24    read that would impact your ability to be fair and impartial in

25    this case?

GC1sCOL1

1          Yes.

2          If yes, explain.

3          From the horrible stories I have heard and seen online

4    and TV footage, I think the inmates are not treated well and

5    lack protection from other inmate attacks, but I can't say it

6    will impact my ability to be a fair and impartial juror in this

7    case.

8          I guess the thing to ask this one is the same question

9    about basing your decision only on what you hear in the

10   courtroom and the court's instructions on the law, right?

11         MR. BELL:  I think that's right, your Honor.  And

12   there are a fair number of those.  I think it is going to be a

13   fairly common refrain.

14         THE COURT:  OK.

15         MR. DRATEL:  Your Honor, also, I think just in terms

16   of vetting the firmness with which these beliefs are held and

17   where they come from is, I think, important in the sense of not

18   just sort of an answer like do you understand that your opinion

19   has to come only from what is in the evidence.

20         They may understand that, at the same time, these

21   opinions may be so firmly held that they can overcome that.  I

22   think it is a dual question.

23         THE COURT:  11, question number 24, is there anything

24   that would create a question in your mind as to whether you

25   should be a jury?

GC1sCOL1

```
 1              Yes.  I do not feel morally comfortable making a
 2    decision in regards to this case.  This is because it's a
 3    criminal case.
 4              Why are we keeping this juror?
 5              MR. SCHMIDT:  We sought to eliminate them, too.
 6              THE COURT:  Is there any reason to keep this one?
 7              MS. CUCINELLA:  We thought it was appropriate to
 8    inquire further.  If your Honor feels it's more appropriate to
 9    strike them, we are OK with striking them.
10              THE COURT:  We're going to get rid of him.  This is
11    Juror No. 11 that we are striking.
12              (Pause)
13              THE COURT:  Defense counsel, is Mr. Coll going to be
14    joining us in the robing room for the original questions?
15              MR. SCHMIDT:  We would like him to be.  Yes, your
16    Honor.
17              THE COURT:  So when I finish telling the jurors what
18    we are going to do, we will just all get up and walk in there
19    with the marshals.  All right?
20              MR. DRATEL:  Thank you, your Honor.
21              THE COURT:  OK.
22              Yes, sir, Mr. Reporter.
23              NEWSDAY REPORTER:  Judge, I'm with *Newsday*.
24              If you're going into the robing room, I would just
25    like to inform the other people in the press room about it.  Do
```

GC1sCOL1

1    you plan to allow a reporter to come, if one wishes, or would

2    that be a nonpublic forum?

3          THE COURT:  I think you can have one.  It is more a

4    matter of the space than it is anything else.  So if you would

5    like to use our phone to call, you're welcome to do that.

6          NEWSDAY REPORTER:  I'll let them know when I go down

7    there.

8          THE DEPUTY CLERK:  Want me to bring them in?

9          THE COURT:  Bring them in.

10         Thank you, Gilbert.

11         (Continued on next page)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

GC1LCOL2

1           (Jury voir dire transcribed in a separate volume)

2           (Jury not present; in open court)

3           THE COURT:  First, we are informed that alternate

4    juror No. 2 does not want to come in.

5           The defendant has been returned.  Does counsel waive

6    his appearance?

7           MR. SCHMIDT:  Yes, your Honor.  We waive Mr. Coll's

8    appearance for this matter.

9           THE COURT:  Thank you.

10          We also agreed that the other jurors could go home and

11   we would bring out alternate No. 2 to say whatever she wants to

12   say.  Have you folks -- do you folks have any suggestions what

13   you would like me to say other than she's required to be here

14   tomorrow?

15          MR. BELL:  No, your Honor.

16          MR. SCHMIDT:  We have no suggestion.

17          (Juror present)

18          THE COURT:  Come right on in, ma'am.  Come right on

19   up, Ms. Marine.  What seems to be the problem, ma'am?

20          JUROR:  I'd rather be at work.  That's my problem.

21          THE COURT:  Okay.  But the law requires you to be

22   here, ma'am.

23          JUROR:  Man, okay.

24          THE COURT:  And, ma'am, if you want me to write a

25   letter to your employer, if you would just give me the

GC1LCOL2

```
 1    information, I'll be happy to write the letter for you.  So
 2    we'll expect to see you before 10 o'clock in the jury room.
 3              Is there anything else, Ms. Marine?  I can't hear you,
 4    ma'am.
 5              JUROR:  Well, I'll think about being here tomorrow.
 6              (Juror not present)
 7              THE COURT:  Counsel, do you wish to comment further?
 8              MR. BELL:  Not at this time, your Honor.  Except that
 9    I imagine that we have address information, contact
10    information.
11              THE DEPUTY CLERK:  No, she didn't leave her phone
12    number.
13              MR. BELL:  She didn't leave her phone number.
14              THE DEPUTY CLERK:  She did not.  Do you want me to run
15    after her?
16              THE COURT:  No.  She'll probably smack you.
17              THE DEPUTY CLERK:  She might.
18              MR. BELL:  We have nothing further, your Honor.
19              MR. SCHMIDT:  Your Honor, I do have a legitimate
20    comment.  I think even if she shows up tomorrow, this juror is
21    going to be a problem.
22              THE COURT:  I don't think this jury is going to be a
23    problem.  This juror is going to be a problem.
24              MR. SCHMIDT:  I meant this juror.
25              THE COURT:  I don't disagree with you.
```

GC1LCOL2

1          MR. SCHMIDT:  And so I think we need to consider

2     whether we are going forward realistically with one alternate

3     or if we need to bring up a few -- either bring back the ones

4     that were qualified, if we can get them, or bring up maybe six

5     from the jury pool.

6          THE COURT:  There's no pool tomorrow.  Tomorrow is

7     Friday.  Do you want us to -- I think there's no one in jury at

8     this hour.

9          MR. SCHMIDT:  I'm sure there's not.

10          THE DEPUTY CLERK:  There's not.

11          MR. SCHMIDT:  Your Honor, for the record, we are ready

12     to proceed with the knowledge that there may indeed be only one

13     alternate down the road.

14          THE COURT:  All right.  Does the government wish to

15     comment?

16          MR. BELL:  We are not at that point.  Let's see what

17     happens.  But we feel strongly given the length of the trial

18     that we ought to have two alternates here.  I think it makes

19     sense for us to see what happens tomorrow.  But I think we

20     would proceed with that principle in mind.  We have a two-week

21     trial.  The notion of somewhat casually and in response to I

22     got to say an immediate negative response to being impaneled,

23     but something that may fade, hopefully reason prevails.  But I

24     think having two alternates is important.

25          THE COURT:  Let's see what happens.  Ms. Phillips does

GC1LCOL2

1    have her phone number.  Let's see what happens.  And bear in

2    mind that we have to balance the availability of a second

3    alternate against total disruption of the jury.  So let's kind

4    of keep an eye on how she seems to be interacting.

5               Thank you, counsel.  Anything else?

6               MS. VARGAS:  No, your Honor.

7               THE COURT:  See you in the morning.  Thank you.

8               (Adjourned to December 2, 2016, at 10 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25