UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff<br><br>     -against-<br><br>BRIAN COLL,<br><br>                Defendant. | 15 Cr. 360 (LAP) |
| BRIAN COLL,<br><br>                Plaintiff<br><br>     -against-<br><br>UNITED STATES OF AMERICA,<br><br>                Defendant. | 19 Civ. 6526 (LAP)<br><br>ORDER |

Loretta A. Preska, Senior United States District Judge:

    Before the Court are three motions by Defendant Brian Coll. First, Mr. Coll moves to vacate his sentence pursuant to 28 U.S.C. § 2255. (See dkt. nos. 160-161.)[1] Second, Mr. Coll moves to dismiss the Murder 2 count. (See dkt. no. 187.) Third, Mr. Coll moves to vacate the indictment. (See dkt. no. 188.) The Government has responded to each of these motions. (See dkt. no. 173 (opposition to the 2255 petition); dkt no. 190 (opposition to the motions to dismiss the Murder 2 count and to vacate the indictment).) On April 12, 2022, Mr. Coll submitted a reply in support of his motion to vacate pursuant to 28 U.S.C.

---

[1] References to the docket are to those in the underlying criminal action (15-cr-360) unless otherwise stated.

1

§ 2255.  (See dkt. no. 29 in 19-cv-6526.)  For the reasons set forth below, the motions are denied.

I. **Background**

Mr. Coll, then a Rikers Island Correction Officer, was convicted after a two-week trial of violating the civil rights of an inmate, Ronald Spear, causing death, pursuant to, inter alia, 18 U.S.C. § 242, and of various obstruction and falsification of records charges for covering it up.  Evidence at trial showed that following an altercation with Mr. Coll, Ronald Spear, who was in the medical unit, walked with a cane, and suffered from numerous maladies, was subdued on the floor in a hallway on his stomach with his hands restrained behind his back and with a Corrections Officer sitting on his legs. (Sentencing Transcript ("Tr."), dated Sept. 13, 2017 [dkt. no. 134], at 7:9-15, 9:6-12.)  Mr. Coll approached the restrained Mr. Spear and kicked him in the head four times, using his hard-toed boot.  (Id. at 7:14-22.)  In the words of the Corrections Officer on Mr. Spear's legs, Mr. Coll kicked Mr. Spear "with a lot of force, like kicking a field goal."  (Id.) After the kicking ceased, Mr. Coll bent down and picked up Mr. Spear's head by the hair.  (Id. at 7:14-23-8:3.)  At this point, Mr. Spear was moaning, had his mouth open, and his eyes rolled back in his head.  (Id.)  Mr. Coll picked up his head by the hair and said "This is what you get for fucking with me.

2

Remember I did this." (Id.) He then dropped Mr. Spear's head down onto the hard floor. (Id. at 8:4.) Mr. Coll immediately orchestrated a cover-up among other Corrections Officers, including perpetrating the falsehood that Mr. Spear had attacked him with a cane. (Id. at 9:24-10:4.) The cover-up went on for years until a cooperating witness finally came forward to reveal the truth. (Id. at 27:6-10.)

Evidence at trial showed that following the murder, Mr. Coll framed a newspaper article about Mr. Spear's death on his wall and bragged about getting a teardrop tattoo near his eye, apparently an indication that the wearer is responsible for a death. (Id. at 33:5-11.)

Because the jury found that Mr. Coll's violation of Mr. Spear's civil rights caused death, the statutory maximum was life, not the 10-year maximum applicable to injury cases. The Court found that the overwhelming evidence indicated that Mr. Coll's conduct "unjustifiably created a high risk of death or serious bodily injury" and accordingly that the second-degree murder sentencing guideline was applicable. (Id. at 4:20-10:19.) Thus, the Court sentenced Mr. Coll to 30 years imprisonment. (Id. at 37:9-12; Judgment, dated Sept. 14, 2017 [dkt. no. 128].)

II. **Legal Standards**

A. **28 U.S.C. § 2255**

Under 28 U.S.C. § 2255, a federal prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the grounds, inter alia, that the "sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). On a Section 2255 motion, the defendant bears the burden of proof by a preponderance of the evidence. See Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000).

Generally, however, a Section 2255 motion may not be used to relitigate issues already decided on direct appeal. See Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States v. Minicone, 994 F.2d 86, 89 (2d Cir. 1993). This is known as the mandate rule. Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010). The mandate rule "prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." Id.; see also United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001).

B. **Ineffective Assistance of Counsel**

In order to prevail on a claim of ineffective assistance of counsel, Petitioner must (1) illustrate that his counsel's

4

conduct fell below the "objective standard of reasonableness," and (2) "affirmatively prove prejudice." Rodriguez v. United States, No. 10 CIV. 5259 (KTD), 2011 WL 4406339, at *2 (S.D.N.Y. Sept. 22, 2011) (quoting Strickland v. Washington, 466 U.S. 668, 693-94 (1984)). "[A] Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Prejudice is established if Petitioner demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The question is not whether the attorney in question adhered to the best practices or customs. Harrington v. Richter, 562 U.S. 86, 105 (2011). Rather, the relevant query is whether the "attorney's representation amounted to incompetence under the prevailing professional norms." Id. (internal quotation marks omitted).

In the context of plea offers, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 566 U.S. 134, 145 (2012). To show Strickland prejudice with respect to counsel's handling of a proposed plea, a defendant "must demonstrate a reasonable probability that but for counsel's deficient performance, he would have pled guilty instead of going to trial." Raysor v.

United States, 647 F.3d 491, 495 (2d Cir. 2011). While a defendant can offer his own statement in support of that showing, "in order for the statement to be sufficiently credible to justify a full hearing, it must be accompanied by some 'objective evidence,' such as a significant sentencing disparity, that supports an inference that the petitioner would have accepted the proposed plea offer if properly advised." Id. (quoting Puglisi v. United States, 586 F.3d 209, 215-16 (2d Cir. 2009)).

In the context of trial strategy, defense counsel's "decisions whether to engage in cross examination, and if so to what extent and in what manner, are . . . strategic in nature," and thus do not amount to ineffectiveness of counsel. United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1997); see also United States v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985) (holding that defense counsel's tactical decision not to cross examine certain witnesses falls within the wide range of reasonable professional representation). Similarly, counsel cannot be deficient for failing to make a meritless argument at trial. Fluckes v. Scutt, No. 08-cv-13938, 2010 WL 5148488, at *6-*7 (E.D. Mich. Dec. 14, 2020) ("Precisely because of the lack of evidence supporting a theory of self-defense, counsel's decision not to develop the theory was a sound trial strategy.").

### C. Motion to Dismiss the Murder 2 Count

Under Rule 12(b)(3) of the Federal Rules of Criminal Procedure, any motion to dismiss (other than a motion for lack of jurisdiction) must be made before trial. Fed. R. Crim. P. 12(b)(3). Under Rule 33(b)(2) of the Federal Rules of Criminal Procedure, a motion to vacate the judgment and grant a new trial grounded on any reason other than newly discovered evidence must be made within 14 days of the jury verdict. Fed. R. Crim. P. 33(b)(2).

With regard to the calculation of sentencing guidelines, "Section 2H1.1(a)(1) of the Guidelines requires the district court to apply the greatest applicable base offense level when sentencing individuals convicted under 18 U.S.C. § 242." United States v. Coll, 762 F. App'x 56 (2d Cir. 2019). A district court can conclude that a defendant acted with malice aforethought if he or she engaged in "[e]xtremely negligent conduct which creates what a reasonable man would realize to be not only an unjustifiable, but also a very high degree of risk of death or serious bodily injury to another . . . and which actually causes the death of another." United States v. Velazquez, 246 F.3d 204, 214 (2d Cir. 2001).

### D. Motion to Vacate the Indictment

Under Rule 12(b)(2) of the Federal Rules of Criminal Procedure, "[a] motion that the court lacks jurisdiction may be

7

made at any time while the case is pending." FED. R. CRIM. P. 12(b)(2). A petitioner's criminal proceedings are no longer pending if "[p]etitioner has been tried, convicted and has had his conviction affirmed on appeal." Rice v. United States, 132 F. Supp. 2d 162, 163 (S.D.N.Y. 2001).

### III. Discussion

#### A.  Motion to Vacate Pursuant to 28 U.S.C. § 2255

Mr. Coll moves to vacate his conviction pursuant to 28 U.S.C. § 2255 on four grounds: (1) insufficiency of the evidence at trial to sustain his conviction; (2) erroneous jury instructions; (3) substantive unreasonableness of his sentence; and (4) ineffective assistance of counsel in communicating a plea offer and at trial. The Court discusses the first three arguments together and separately discusses the ineffective assistance argument.

#### 1.  Insufficiency, Jury Instructions, and Substantive Unreasonableness

This is not the first time Mr. Coll has sought to attack his conviction and sentence on the grounds of insufficiency of the evidence, purportedly erroneous jury instructions, and purported substantive unreasonableness of his sentence. After the Court sentenced Mr. Coll and entered a final judgment against him, Mr. Coll challenged all of these aspects of his conviction and sentencing. See Brief for Defendant-Appellant at

8

28-36 (insufficiency), 37-46 (jury instructions), 47-56 (substantive unreasonableness), United States v. Coll, 762 F. App'x 56 (2d Cir. 2019) (No. 17-2900), 2018 WL 2218916.

The Court of Appeals rejected these arguments and affirmed Mr. Coll's conviction and sentence. See generally id. at 56. As to Mr. Coll's challenge to the sufficiency of the evidence, the Court of Appeals concluded that "a rational jury could have found beyond a reasonable doubt that Coll's kicks were the actual cause of Spear's death." Id. at 59. As to Mr. Coll's challenge to the jury instructions, the Court of Appeals concluded that "even assuming for the sake of argument that this language were erroneous, any error would not have prejudiced Coll because the Government presented overwhelming evidence that death itself was a natural and foreseeable result of Coll repeatedly kicking Spear, whom he knew suffered from serious health problems, in the head." Id. at 60. And as to Mr. Coll's challenge that his sentence was unreasonable, the Court of Appeals concluded that there was "ample evidence" that Coll's conduct "clearly manifested a reckless indifference to whether Spear lived or died" and the "alleged provocation offered by an already frail Spear . . . was not objectively sufficient to arouse the passions of a reasonable correction officer;" that the enhancement for vulnerable victims was not clearly erroneous; that the Court "thoughtfully and carefully" evaluated

9

the section 3553(a) factors; and that the sentence imposed was not substantively unreasonable. Id. at 61-62.

Mr. Coll is procedurally barred from using Section 2255 to relitigate by collateral attack questions that were raised and considered on direct appeal. See United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2001); see, e.g., United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001). Thus, Mr. Coll's Section 2255 petition is denied as to these grounds which have already been litigated and squarely rejected by the Court of Appeals.

### 2. Ineffective Assistance of Counsel

Mr. Coll next argues that his trial counsel rendered ineffective assistance[2] by (1) rejecting a plea offer made by the Government without consulting him (Mot. 4-7); (2) failing to contest the admissibility of a framed newspaper article found on a desk in his bedroom (Mot. 3); (3) failing to raise as a defense the "[l]ack of slides of the brain of the deceased" (Mot. 3); and (4) failing adequately to raise self-defense as a

---

[2] (See Mot. To Vacate Under 28 U.S.C. 2255, dated July 19, 2019 [dkt. no. 160]; Mem. in Support ("Mot."), dated July 11, 2019 [dkt. no. 161].)

defense. (Mot. 7-8).³ The Court considers each alleged ground of insufficiency in turn.

First, Mr. Coll's claim of failure to communicate a plea is meritless because the Government never made a formal plea offer, and thus there was no plea offer for his counsel to reject without consulting him.⁴ The duty of defense counsel to communicate plea terms and conditions applies only to <u>formal</u> offers from the prosecution, not to informal plea negotiations. See <u>Frye</u>, 566 U.S. at 146 (explaining that its holding applies only to formal plea offers, as their documentation helps ensure against late or fabricated claims regarding earlier negotiations); <u>see also</u> <u>United States v. McCall</u>, No. C 00-00505 WHA, 2014 WL 2581353, at *3 ("[T]here is either a formal plea offer, or in its absence, mere discussions between counsel . . . . It would be a near-impossible burden to require defense counsel to update defendant on each twist and turn in informal conversations."). Here, Mr. Coll claims that "after trial [defense] counsel mentioned to the petitioner that there was a plea offer and that he, trial counsel, refused it doing so

---

³ Mr. Coll additionally asserts that a remark by the Court at the "pretrial stage" is grounds for recusal. (Mot. at 3.) The Court has been unable to identify this alleged remark in the record. In any event, Mr. Coll fails to explain how this alleged remark rendered his sentence in violation of the Constitution or the laws of the United States, or otherwise supports any ground for vacatur of his sentence.
⁴ (<u>See</u> Declaration of Sam Schmidt dated Nov. 2, 2020 ("Schmidt Decl.") ¶¶ 5-7, [dkt. no. 173-1]).

11

without the petitioner's knowledge." (Mot. 6.) Mr. Coll does not claim any personal knowledge that an offer was made, and he does not specify when the offer was made or any of its purported terms. Furthermore, Mr. Coll's own attorney declared that "[a]t no time did the government commit itself to a formal or informal plea offer." (Schmidt Decl. ¶ 5.) The record does show that prosecutors and defense counsel engaged in <u>informal</u> plea discussions as to the framework of a potential plea, but "no plea was offered." (<u>Id.</u> at ¶ 7.) Thus, Mr. Coll's claim for failure to communicate a plea fails at the outset. See <u>Lafler v. Cooper</u>, 566 U.S. 156, 168 (2012) (holding that the issue of ineffective assistance of counsel does not arise if no plea offer is made); <u>Barnes v. United States</u>, No. 13 Civ. 1226 (SAS), 2013 WL 3357925, at *7 (S.D.N.Y. July 2, 2013)("The absence of a plea offer is fatal to the ineffective assistance of counsel claims.").

Moreover, even if an ineffective assistance claim could lie for failure to convey information regarding these informal negotiations, the record also establishes that defense counsel did update Mr. Coll on the substance of these negotiations. (Schmidt Decl. at ¶¶ 3-4.) However, Mr. Coll was unwilling to agree to the Government's parameters, which would have required him to plead guilty to the charge where death resulted. (<u>Id.</u> ¶¶ 3-5.)

12

Mr. Coll also fails to justify a full evidentiary hearing on his ineffective assistance claim because his own statements, without more, are insufficient to create a prima facie showing that he is entitled to relief under Section 2255. See Haouari v. United States, 510 F.3d 350, 354 (2d Cir. 2007) (holding that hearsay statements will not suffice to warrant an evidentiary hearing in the district court on a § 2255 petition); see also Raysor, 647 F.3d at 495 (granting an evidentiary hearing where appellant supplemented his own statements with evidence of a substantial disparity between his sentence and an offered plea agreement). As discussed above, Mr. Coll does not claim any personal knowledge that an offer was made, and he does not specify when the offer was made or any of its purported terms. Furthermore, the record does not show any indication that a formal plea offer was made. On the contrary, Mr. Coll's attorney declared under penalty of perjury that "[a]t no time did the government commit itself to a formal or informal plea offer . . . . Since no plea offer was offered, there was no plea offer to reject." (Schmidt Decl. ¶¶ 5-7.) Thus, the Court finds that Mr. Coll's allegation alone does not create a factual dispute as to whether a plea offer was made. See Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (clarifying that a district court must exercise its discretion in determining

13

whether a hearing would offer any reasonable chance of altering its view of the facts).

Second, Mr. Coll claims ineffectiveness of counsel for failing to contest the admissibility of an "illegally obtained" photograph of a framed newspaper article found in his home. (Mot. at 3; see also GX1101.) If Mr. Coll's claim is that his counsel simply failed to object to the article's admissibility, this claim would be contrary to the facts. Defense counsel did object to the article as unfairly prejudicial, on the grounds that "the photograph has the capacity to confuse and/or mislead the jury." (Dkt. no. 73.) The Government agreed to redact the text of the article, and the Court overruled the objection to the article's headline and photograph.[5]

If Mr. Coll's claim is that his counsel failed to object that the article was "illegally obtained," he does not articulate any basis for this objection beyond the fact that the article was "taken from the petitioner's home without his knowledge." (Mot. at 3.) The photograph of the article was voluntarily provided to the Government by a family member with access to Mr. Coll's apartment. (See dkt. no. 173. at 22.) Thus, there is no factual basis to support Mr. Coll's argument that the article was "illegally obtained" by the Government.

---

[5] (Trial Transcript ("Trial Tr."), [dkt. nos. 88, 90, 92, 94, 96, 98, 100, 102, 104, 106, 108], at 179:8-183:10).

14

See United States v. Jacobsen, 466 U.S. 109, 113 (1984) (holding that the Fourth Amendment does not apply to a search or seizure "effected by a private individual not acting as an agent of the government or with the participation or knowledge of any government official"). Moreover, even without the framed article, the prosecution presented overwhelming evidence that Mr. Coll acted willfully, and the Court cannot reasonably find that the exclusion of the article would have changed the outcome of the trial.

Third, Mr. Coll claims that his counsel was ineffective for failing to raise as a defense the "[l]ack of slides of the brain of the deceased." (Mot. at 3.) Again, Mr. Coll's claim is not supported by the record. Defense counsel did in fact point to the lack of brain slides through expert witness Dr. Hua's testimony. Dr. Hua testified that without the brain slides it was impossible precisely to date the hemorrhage suffered by the deceased and thus impossible to conclude whether it was a result of injury or disease. (Trial Tr. 1004:3-14.) Mr. Coll seems to take issue with his counsel's decision to present this defense through Dr. Hua's testimony rather than through a cross examination of the medical examiner. (Mot. at 3.) This claim does not amount to ineffectiveness of counsel because "decisions whether to engage in cross examination, and if so to what extent and in what manner, are . . . strategic in nature." Nersesian,

15

824 F.2d at 1321; see also Murray, 751 F.2d at 1535 (holding that defense counsel's tactical decision not to cross examine certain witnesses falls within the wide range of reasonable professional representation). Moreover, defense counsel attempted to cross examine the Government's rebuttal expert on the issue of missing brain slides. (Trial Tr. 1300:18-1301:6.) This expert testified that brain slides are not necessary in cases such as this one where "an experienced neuropathologist can tell the difference between ischemia and trauma quite easily just by looking at the gross specimen." (Id.) This fruitless cross examination further underscores the unlikeliness that defense counsel's failure to raise the lack of brain slides as a defense would have altered the outcome of the trial.

Fourth, and finally, Mr. Coll claims that his counsel was ineffective for failing adequately to raise self-defense as a defense. (Mot. 7-8.) "Counsel is not deficient for not making a meritless request at trial." Fluckes, 2010 WL 5148488, at *6-7 ("Precisely because of the lack of evidence supporting a theory of self-defense, counsel's decision not to develop the theory was a sound trial strategy."). In this case, Mr. Spear was restrained by another officer on the floor when Mr. Coll kicked him. (See Tr. at 7:14-22.) There is no viable argument to be made that kicking a restrained individual in the head was done in self-defense, and, thus, defense counsel's decision not

16

to advance the argument "falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Moreover, defense counsel extensively attempted to argue first that Mr. Coll did not kick Mr. Spear in the head and, second, that Mr. Spear sustained his injuries while he was being lawfully restrained by corrections officers. While this argument was overcome by the overwhelming evidence against Mr. Coll, including eyewitness testimony and the testimony of a medical examiner, defense counsel's decision to focus their efforts on refuting the evidence that Mr. Coll caused Spear's death was certainly "sound trial strategy." Id.

### B. Motion to Dismiss the Murder 2 Count

Mr. Coll moves to dismiss the "murder 2 charge" on the ground that the Government failed to establish the elements of murder in the second degree. (See dkt. no. 187 at 1.) Mr. Coll focuses specifically on the intent element, arguing that "[t]here was no malice or intent" and that the Government had no way to determine what he was thinking. (Id.)

The Court need not reach the merits of this claim because it is procedurally improper. Under Rule 12 of the Federal Rules of Criminal Procedure, any motion to dismiss (other than a motion for lack of jurisdiction) must be made before trial. Fed. R. Crim. P. 12(b)(3). Under Rule 33, a motion to vacate the judgment and grant a new trial grounded on any reason other

17

than newly discovered evidence must be made within 14 days of the jury verdict. Fed. R. Crim. P. 33(b)(2). Here, nearly five years have passed since Mr. Coll's conviction, and this motion rests on neither a lack of jurisdiction nor newly discovered evidence. Thus, his motion to dismiss is untimely under the Federal Rules of Criminal Procedure.

Assuming arguendo that Mr. Coll's motion was not time barred, this motion is still without merit. Mr. Coll seems to misunderstand the role that murder in the second degree played in his criminal proceedings. Mr. Coll was never charged with murder in the second degree; it was only relevant to the calculation of his guidelines range. This Court found that this crime was an appropriate baseline for those guidelines because Mr. Coll demonstrated a "heightened disregard for human life." (Tr. 6:8-10.) Mr. Coll's focus on the intent element is misplaced, as the Government need only prove "[e]xtremely negligent conduct which creates what a reasonable man would realize to be not only an unjustifiable, but also a very high degree of risk of death or serious bodily injury to another . . . and which actually causes the death of another." Velazquez, 246 F.3d at 214. Here, this Court held that "any reasonable person would understand that savagely and repeatedly kicking a person in the head creates a high risk of death or serious bodily injury." (Tr. 8:22-24.) And the Court of

Appeals affirmed this Court's conclusion that second degree murder was the appropriate base offense level for Mr. Coll's guidelines. See Coll, 762 F. App'x. at 61. Thus, the Court denies Mr. Coll's attempt to relitigate this issue in an untimely motion to dismiss.

### C. Motion to Vacate the Indictment

Mr. Coll moves to vacate the indictment for lack of jurisdiction on the ground that the Rikers Island facility on which he committed his crime was not federal property. (See dkt. no. 188.) Again, however, Mr. Coll's claim is untimely. As mentioned above, Rule 12 of the Federal Rules of Criminal Procedure allows for a motion to dismiss for lack of jurisdiction to be made at any time while the case is pending. Here, Mr. Coll's case has been tried, he has been convicted, and his conviction has been affirmed on appeal. See Fed. R. Crim. P. 12(b)(2); see also Coll, 762 F. App'x at 56. Thus, because Mr. Coll's case is no longer pending, his motion to vacate for lack of jurisdiction is time barred. See Rice, 132 F. Supp. 2d at 163 (holding that a motion under Rule 12(b)(2) is not available to a petitioner whose case has been tried, convicted, and affirmed).

Assuming arguendo that this motion was not time barred, Mr. Coll's claim is nonetheless uncompelling. Mr. Coll's claim that this Court lacked jurisdiction to indict him under 18

19

U.S.C. § 242 rests on Adams v. United States, a decision from nearly 80 years ago which concerned then 18 U.S.C. § 457, an entirely different statute. 319 U.S. 312, 313-14 (1943). Section 457 made it a federal crime to commit rape on lands owned by the United States and over which it had exclusive or concurrent jurisdiction. Id. Unlike section 457, section 242 does not require any nexus to federal property. See 18 U.S.C. § 242. Thus, Mr. Coll's argument for lack of jurisdiction is both untimely and substantively without merit.

### IV. Conclusion

For the reasons set out above, Petitioner's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (dkt. nos. 160-161) is DENIED. Petitioner's motion to dismiss the Murder 2 count (dkt. no. 187.) is also DENIED. Petitioner's motion to vacate the indictment (dkt. no. 188.) is also DENIED.

The Clerk of the Court shall mail a copy of this order to Defendant.

**SO ORDERED.**

Dated:    New York, New York
          June 15, 2022

*Loretta A. Preska*
LORETTA A. PRESKA
Senior United States District Judge